Cyrus E. Dietz and Fred H. Railsback, Appellees, v. Leontine Van Speybroeck, Administratrix, Appellant.

Gen. No. 7,016.

1. ATTORNEY AND CLIENT—*effect of agreement with client as to fees in suit for divorce.* A cross complainant in a divorce proceeding had a right to contract with her attorneys in reference to the fees they should receive for services in the pending litigation.

2. ATTORNEY AND CLIENT—*effect of agreement for contingent fee in divorce suit.* Under an agreement between a cross complainant in a divorce suit and her attorneys that they were to receive whatever the complainant might be compelled to. pay on account of solicitors' fees and, in addition, a sum of money equal to the value. of one-half of all the property which should be saved to or acquired for cross complainant by settlement or otherwise through such proceedings, the attorneys were entitled to one-half the property so saved to their client regardless of how it was saved through the proceedings.

3. DIVORCE—*death of complainant as affecting power of court to enter decree awarding property.* Where the trial judge made docket entries awarding to the cross complainant in a divorce suit certain real estate but no decree was formally entered before her death, the court thereafter was powerless to do so.

4. DIVORCE—*abatement of suit by death of party.* A divorce suit is abated by the death of either party as matter of law.

5. ABATEMENT AND REVIVAL—*death of party to divorce suit as affecting further proceedings to contest title to property.* Where a divorce suit, in which the right of the wife to a share of the real estate was in question, was abated by the death of the wife, the husband was not estopped from instituting further proceedings to contest the title with her heirs because the proceedings were declared abated upon his motion.

6. ATTORNEY AND CLIENT—*abatement of action as affecting rights under contingent fee contract.* Where the attorneys for the cross complainant in a divorce suit made an agreement with her that they should have a sum equal to one-half the value of the real estate which should be saved to or acquired for her and the suit was abated by her death before a decree as to the property was entered, they were not entitled to a share of a one-half interest in the real estate although the husband had in his complaint attacked her right to an interest in such property.

7. ESTOPPEL—*admission as to title to realty as affecting right to*

*deny services in securing it.* An administratrix, by admitting that her intestate was the owner in fee of an undivided one-half interest in certain real estate belonging to her husband, her right to which was in litigation in a divorce proceeding at the time of her death, was not estopped to deny that such interest was saved to intestate as a result of the divorce proceedings, which were abated upon her death, within the terms of an agreement with the attorneys for intestate for a contingent fee based upon the property saved or acquired for her as a result of the proceedings.

Appeal from the Circuit Court of Rock Island county; the Hon. W. T. Church, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded with directions. Opinion filed April 27, 1922. Rehearing denied October 3, 1922. *Certiorari* denied by Supreme Court (making opinion final).

S. E. & George D. Long and Joseph L. Haas, for appellant.

J. T. Kenworthy, for appellees.

Mr. Justice Jones delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Rock Island county allowing a claim in favor of appellees against the estate of Emma Ghys, deceased, in the sum of $3,375.

Peter Ghys filed a bill for divorce in the circuit court of Rock Island county charging his wife, Emma Ghys, with adultery and with extreme and repeated cruelty. The bill alleged among other things that certain real estate, the record title to which was in the names of himself and wife, was his sole property and that his said wife never had any interest therein except that which she acquired through the marriage relation, and it prayed that the title to the entire premises be decreed to be vested in him.

Emma Ghys, the defendant in said proceeding for divorce, thereupon employed appellees, attorneys at law, to represent her in such proceedings and to file an answer and a cross-bill. The terms of employment

are evidenced by a certain letter written by appellees to Emma Ghys in which it is set forth that appellees are to receive whatever the complainant (Peter Ghys) may be compelled to pay appellees on account of solicitors' fees and in addition thereto a sum of money equal to one-half of all the property in litigation in this proceeding, which may be saved to or acquired for Emma Ghys, either by settlement or otherwise. Appellees filed an answer and cross-bill on behalf of their client. By the cross-bill she charged her husband with adultery, extreme and repeated cruelty and habitual drunkenness. She prayed for a divorce and that her property rights might be adjudicated and determined and that she might be decreed to have and hold, free and clear of any claim or right or interest of the said Peter Ghys, an equal undivided half of all of said real estate and for other relief. She afterwards filed a supplemental cross-bill setting up certain matters that had occurred subsequent to the time of the filing of the original cross-bill. The original complainant also filed a supplemental bill. Answer was filed to this bill and also to the supplemental cross-bill.

A trial was had on the merits by a jury. It was begun February 1, 1917, and progressed until February 9, 1917. The jury returned a verdict in favor of the cross complainant, finding the said Peter Ghys guilty of extreme and repeated cruelty and of habitual drunkenness. On March 2, 1917, he filed a motion for a new trial. A hearing was had on said motion and the cause on said motion was taken under advisement by the court. A hearing as to property rights began on April 23, 1917, and progressed until April 26, 1917, and this matter was also taken under advisement by the court. On May 10, 1917, the motion for a new trial was overruled and the presiding judge made the following docket entry:

"Motion for a new trial in divorce part overruled; as to property rights and alimony, court finds that

cross-complainant, Emma Ghys, is entitled to, and should have in fee, as her own and separate property, lots 3, 31, 32, all household goods now in her possession, and in addition thereto $1,600.00 in cash to be paid by complt. to her or her solicitors of record, within 4 months, and said $1,600.00 to be a lien on the other real estate herein given to Peter Ghys, complt., and that Peter Ghys shall have all the remainder of the property as his own separate property and to pay the costs and solicitors' fees and the said $1,600.00. Cross-complainant is further allowed whatever right in her own right she has, if any, in and to one-half interest in a certain note for $2,000.00 signed by Van Speybroeck. Further said complt. is to pay all other costs of suit and judgment for same accordingly.''

Two days later Emma Ghys filed a motion to set aside the judgment and finding of the court as to alimony, property rights and solicitors' fees only, and the cause on this motion was heard and taken under advisement by the court. On May 28, 1917, Emma Ghys died. At the time of her death the court had not decided her said motion to set aside the judgment and findings of the court in reference to the property rights and alimony. No decree had been entered upon the verdict of the jury granting the cross complainant a divorce or fixing her property rights.

Subsequent to the death of Emma Ghys, the said Peter Ghys suggested of record the death of his said wife and upon his motion all proceedings were abated. Prior to the entry of the court's order abating the proceedings, appellees filed an intervening petition asking that they might be declared to have a lien upon the real estate mentioned in the judge's docket entry and which were awarded to the cross complainant. Motion to strike said intervening petition was allowed. Afterwards appellees filed their claim against the estate of Emma Ghys in the sum of $4,750. A hearing was had upon this claim in the county court and the claim was allowed in the sum of $3,375. An appeal to the cir-

cuit court was taken and the claim was there allowed in the same sum as aforesaid. An appeal is now prosecuted in this court. All facts were stipulated. Among those stipulated are that appellees have been paid $750 on account of solicitors' fees; that Emma Ghys died seized and possessed of an undivided one-half interest in said real estate described in the original bill of complaint; that the same was inventoried by appellant, that all of said real estate is of the value of $13,500; that at the time the motion for a new trial was overruled, the trial judge announced that in his opinion the amount theretofore allowed as solicitors' fees to appellees was not sufficient and that a reasonable fee to be allowed for their services would be $1,500 and that the balance thereof amounting to $750 should be paid by the said Emma Ghys.

The basis for the allowance of appellees' claim is that it is one-half the value of all property saved to Emma Ghys by settlement or otherwise through the above-mentioned proceedings for divorce. If the real estate mentioned in the said inventory and admitted in the stipulation to be the property of the said Emma Ghys at the time of her death was saved to her by settlement or otherwise through said proceedings, then the claim was properly allowed. Appellant's intestate had a right to contract with her attorneys in reference to the fees they should receive for services in the pending litigation and we believe that the construction placed upon the contract by appellees is a correct one, that is to say, that it makes no difference how the property was saved through such proceedings. If it was in fact saved to her through such proceedings, they became entitled to their compensation under the terms of the contract. The entire property was valued at $13,500. The value of an undivided one-half thereof is $6,750, and the compensation of appellees based thereon is $3,375.

It is therefore necessary to determine whether or

not the property was saved to Emma Ghys through such proceedings. The original bill of complaint alleged that she had no interest whatever in such real estate except that which she acquired through the marriage relation. The complainant sought to divest her of all right, title and interest therein and to have himself decreed to be the sole and absolute owner thereof. If the prayer of his bill had been granted, then she would have been stripped of all interest in said premises. She, therefore, sought to protect and save her interests and if the proceedings resulted in accomplishing that for her, she became liable to her attorneys for compensation as provided by her contract with them.

Appellant contends that the proceedings did not result in saving anything to her; that because of her death the proceedings abated and she was left in the same position with respect to the property that she was in at the time the original bill was filed, and that so far as such proceedings are concerned she saved nothing and lost nothing by them. On the other hand, the appellees claim that the proceedings having been abated on motion of the original complainant, he abandoned his claim to the undivided one-half of said real estate held in the name of his wife and that the order declaring the said proceedings to be abated is *res judicata* as to any such claim on his part and therefore Emma Ghys became the absolute owner of an undivided one-half interest in the real estate, free from the said claim of Peter Ghys.

Although the trial judge made docket entries awarding certain real estate to the cross complainant, no decree was formally entered and after her death the court was powerless to do so. In *Bushnell v. Cooper,* 289 Ill. 260, it is said that: "Marriage is a personal relation or status created under the sanction of law, and an action for divorce is a proceeding brought for the purpose of effecting a dissolution of that relation.

The action is one of a personal nature. In the absence of a statute to the contrary, the death of one of the parties to such action abates the action, for the reason that death has settled the question of separation beyond all controversy and deprived the court of jurisdiction, both over the persons of the parties to the action and of the subject-matter of the action itself. For this reason the courts are almost unanimous in holding that the death of either party to a divorce proceeding, before final decree, abates the action.'' It will thus be seen that so far as the action related to a divorce, it was abated by the death of Emma Ghys as a matter of law and the motion of the original complainant that the proceeding be declared to be abated was only a formal method of disposing of the case and of having done that which the law declares should be done.

It is argued that the proceedings being thus terminated, the original complainant can no longer contend that his deceased wife was not the owner of an undivided one-half of the real estate in controversy; that the judgment of the court declaring the proceedings to have been abated is *res judicata* as to this question. We do not think the doctrine of *res judicata* applies at all in this case. The term *''res judicata''* is defined to be: ''A matter adjudged''; ''a thing judicially acted upon or decided''; ''a thing or matter settled by judgment''; ''a thing definitely settled by judicial decision.'' (34 Cyc. 1666.) There was nothing judicially determined in the proceedings between the husband and wife. The court did reach a conclusion that Emma Ghys was entitled to and should have in fee as her own and separate property certain specifically described real estate but it was not the conclusion of the court that she was entitled to an undivided one-half interest in any of the real estate. No formal decree was entered and therefore the title to no real estate was declared to be in Emma Ghys as a

thing definitely settled by judicial decision. Appellees claim nothing by reason of the memorandum order of the trial judge nor the conclusions reached by him, because no formal decree was entered in the cause. If a decree had been entered their compensation would not have been based upon one-half of the value of all the real estate but it would have been based upon the entire value of the property awarded to Emma Ghys by such decree. Appellees say in their brief that the dismissal of the proceedings on complainant's motion was *res judicata* as to his right to ever again in any other proceeding attack his wife's title to the lands in question on the grounds set up in his bill; or to attack the title thereto which descended to her heirs as he had had, upon that question, his day in court and had abandoned the proceedings. They submit no authority in support of their position and it is doubtful if any such authority can be found. That he is not precluded from again questioning the title of his wife and her heirs by the doctrine of *res judicata* is evident for the simple reason that the question of title has not been adjudicated. Neither is he estopped from instituting further proceedings to contest the title with her heirs. So far as the suit related to the question of divorce, it was abated by operation of law and not by reason of his motion filed in the proceedings. That as we have hereinbefore observed was only the formal action employed in carrying out the law's command. If it be said that the original complainant might, by a substitution of parties, have had the question of title litigated in such proceedings notwithstanding the abatement of all questions concerning divorce, still he was not compelled to pursue such a course. He was at liberty, if he chose, to institute a separate suit for that purpose, and we see no legal obstacle in his way if he should choose to do so.

As a general rule, the death of a party to a suit in equity abates the suit, although the interest which he

has in the suit, or which he represents, survives. As is said in 1 C. J. 155, the abatement does not amount to a determination of the suit. We, therefore, conclude that there was no judicial determination, in any sense, that fixed, determined and adjudicated the right of either party to the land in question. Such being the case, how can it be that any real estate was saved to Emma Ghys in, through or by the above-mentioned proceedings? Appellees also claim in their brief that they are entitled to compensation under their contract because the real estate was saved from that attack and assault upon it, inferring that because no final decree was entered against the cross complainant adjudging that she had no interest in any of the lands, therefore, their compensation was earned. We do not believe the contract of employment is susceptible of any such construction. The plain and evident meaning of the contract was that the property must be eventually saved to Emma Ghys or acquired for her, either by settlement or otherwise. No compensation could become due until her rights to such property had been fixed in some manner. This was never done in any manner whatsoever. When the proceedings were abated, her title was still subject to attack.

Appellees also claim that because the appellant, who is the administratrix and only heir of Emma Ghys, deceased, has admitted in the stipulation and in the inventory filed by her that her mother was the owner in fee of an undivided one-half interest of said real estate, she is estopped to say in this suit that her mother's title to said lands was not saved in said proceedings. Such a claim is not sound. Why should she be deemed estopped from denying that appellees were entitled to compensation simply because she now admits what both her mother and appellees insisted upon in the divorce proceedings, to wit, that her mother was vested with an undivided one-half interest in the lands? An admission by appellant that her

mother was vested with title is not the same thing as an admission by her that her mother became vested with such title by reason of the services of appellees. She has nowhere admitted that her mother's title was saved or acquired for her either by settlement or otherwise in said litigation. We, therefore, reach the conclusion that appellees are not entitled to anything as compensation under the terms of their contract for saving or acquiring for Emma Ghys any property mentioned in said proceedings for divorce. In reaching this conclusion we are not unmindful of the fact that appellees rendered their client successful service in defeating the charges made against her by her husband and in establishing the truth of certain charges made by her against him. How successful appellees would have been in reference to property rights if their client had lived is wholly a matter of conjecture. The conclusion which the trial judge reached in reference to such rights was not satisfactory to appellees and their client as is evidenced by their motion to set aside the finding of the court in reference to property rights, alimony, etc. Whether such motion would have prevailed or not upon a hearing cannot be answered. The thing which is certain is that no property rights were saved or acquired for Mrs. Ghys, but by her death and the abatement of the suit such rights were left just as they were when the litigation began.

Appellant concedes there should be allowed on appellees' claim $750 under the stipulation of the parties and acknowledges that sum to be due and owing appellees.

This cause is therefore reversed and remanded to the circuit court with directions to allow appellees' claim in the sum of $750 as of the sixth class against the estate of said Emma Ghys, deceased, to be paid in. due course of administration and for such further proceedings as may be consistent with this opinion.

*Reversed and remanded with directions.*