*In re* MARRIAGE OF JEANNE LYNNE NICHOLAS, Plaintiff, and JIMMY EARL NICHOLAS, Defendant-Appellee (Jerome G. McArthur *et al.*, Intervenors-Appellants; Robert McArthur *et al.*, Intervenors).

Third District No: 3—87—0696

Opinion filed June 3, 1988.

Braud/Warner, Ltd., of Rock Island (Duane Thompson, of counsel), for appellants.

Bill Butts Barrister, Ltd., of Galesburg (Bill Butts, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:
This case comes on appeal of an order dated September 18, 1987,

denying appellants' motion for leave to intervene and dismissing appellants' motion for leave to file petition for modification of custody and motion for temporary custody pursuant to section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)).

Jeanne Lynne Nicholas and Jimmy Earl Nicholas (defendant-appellee) were married on August 1, 1980. On January 8, 1982, Eric Jon Nicholas was born. A somewhat complex court file indicates that the parties separated on July 18, 1986. On that same date it appears as though an *ex parte* domestic violence order of protection was entered requiring defendant to refrain from striking, threatening, harassing or interfering with the personal liberty of Jeanne and Eric Nicholas. That order was extended to August 12, 1987, by order filed July 28, 1986. On August 12, 1987, a temporary order was entered granting the temporary custody and care of Eric to Jeanne subject to defendant's right to visitation on alternate weekends. Defendant was further enjoined from making any contact with Jeanne or Eric except for visitation. The parties' marriage was dissolved by order dated December 18, 1986, and a judgment of dissolution of marriage (bifurcated: economic issues settled) was entered on March 31, 1987, wherein the trial court found that the mother was a fit and proper person to have the care, custody, control and right to direct the secular and religious education of the minor child. No finding was made regarding the fitness of defendant. The judgment also incorporated a visitation schedule which gave defendant the right to visit Eric on alternate weekends, two weeks during the summer, and certain holidays. There is no indication in the record whether defendant was regularly exercising his right to visitation.

Apparently Jeanne Nicholas suffered from terminal cancer and passed away on July 24, 1987. On July 27, 1987, defendant filed a motion to modify child custody alleging that Eric's present environment seriously endangered his physical, mental, moral or emotional well-being in that the wife was terminally ill with cancer and unable to properly care for him. On July 29, 1987, defendant filed a similar second motion to modify child custody, this time alleging the wife had died on July 24, 1987. Defendant simultaneously filed a petition for emergency order of *habeas corpus* alleging that Eric was being unlawfully restrained by Robert McArthur and Louise McArthur, Eric's maternal grandparents, and that the McArthurs had threatened to take Eric out of this jurisdiction. An order of *habeas corpus* was entered requiring the McArthurs to produce the minor on July 30, 1987.

On July 31, 1987, defendant filed a second petition for emergency

order of *habeas corpus,* this time alleging that Marilyn Lambert was unlawfully restraining Eric and that she had threatened to take Eric out of this jurisdiction. We find no order in the record relating to this petition. Also on July 31, 1987, was a motion for leave to be added as intervenors and a motion for leave to file petition for modification of custody judgment order, with supporting affidavit filed by Jerome McArthur and Susan McArthur, Eric's aunt and uncle.

On August 7, 1987, Robert McArthur and Louise McArthur filed a motion for leave to intervene. On August 24, 1987, Jerome and Susan McArthur filed their answer to defendant's motion to modify child custody, their petition to modify custody and their motion for temporary custody. On this same date Robert and Louise McArthur filed their petition for visitation and motion for temporary visitation.

Our purpose for reciting all of the various petitions and motions filed in this case is that our review of the docket and record reveals that only two hearings were held pursuant to all of these requests for relief. The first, held on July 29, 1987, was an *ex parte* hearing on defendant's petition for writ of *habeas corpus* which resulted in an order of *habeas corpus* requiring Robert McArthur and Louise McArthur to produce Eric on July 30, 1987, for hearing. We find no record of any hearing being held on July 30, 1987. The docket entry next reflects that some type of court proceeding was held on August 27, 1987, wherein the docket entry states that the McArthurs' attorney was found in contempt of court. There is no docket entry of any evidence heard or arguments made on any of the petitions or motions filed herein. We have, however, reviewed the transcript of the August 27 court proceeding and the order resulting from said proceeding signed and filed September 18, 1987. As we understood the transcript, on August 27 the trial judge allowed defendant's oral motion to dismiss Jerome and Susan McArthur's motion to intervene, motion for leave to file petition for modification of custody and motion for temporary custody and accordingly by order dated September 18, 1987, denied the intervention petition and dismissed the custody motions. The trial court's order was based upon appellants' lack of standing under section 601(b)(2) of the IMDMA (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)) and the case of *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 491 N.E.2d 1150, which impressed the trial court as factually similar to the present case. The transcript further indicates that no evidence was taken at the hearing although arguments of counsel were heard.

Robert and Louise McArthur were allowed to intervene for visitation purposes but are not a part of this appeal. Therefore, only the

petitions and motions filed by defendant or by Jerome and Susan McArthur, appellants, are before this court.

■ Appellants first argue that the trial court erred in denying their motion for intervention based upon section 601(c) of the IMDMA, which states that "[t]he court, upon showing of good cause, may permit intervention of other interested parties." (Ill. Rev. Stat. 1985, ch. 40, par. 601(c).) Appellants assert that this standard for intervention in a custody proceeding is entirely different than the standing requirements of nonparents under IMDMA section 601(b)(2) (Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2)). Therefore, we will first consider how sections 601(b)(2) and 601(c) interrelate with regard to custody proceedings.

Section 601(b)(2) states:

"(b) A child custody proceeding is commenced in the court:

\* \* \*

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." Ill. Rev. Stat. 1985, ch. 40, par. 601(b)(2).

In *In re Custody of Peterson,* the Illinois Supreme Court stated that nonparents must first show that the child is "not in the physical custody of one of his parents" to acquire standing to petition for custody. Once this standing requirement has been satisfied, nonparents will be considered for custody under the "best interest of the child" standard. (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150, 1152.) A nonparent failing to satisfy the standing requirement must proceed under the stricter requirements imposed by the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501 *et seq.*), or the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*), which basically require a showing that the parents are unfit. (*Peterson,* 112 Ill. 2d at 52, 491 N.E.2d at 1152.) The purpose of this standing requirement is to preserve the presumed superior rights of natural parents to custody of their children. *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 440 N.E.2d 1036.

■ Section 601(c) states as follows:

"(c) Notice of a child custody proceeding shall be given to the child's parents, guardian and custodian, who may appear, be heard, and file a responsive pleading. The court, upon showing of good cause, may permit intervention of other interested parties." Ill. Rev. Stat. 1985, ch. 40, par. 601(c).

Appellants argue that they have, by affidavit, shown good cause

in support of their motion for leave to intervene. Appellants, however, have not cited, nor have we found, authority supporting the proposition that third-party intervenors need not satisfy the standing requirement of section 601(b)(2) to be considered under the IMDMA "best interest of the child" test.

■ We believe that allowing appellants to intervene and petition for custody under section 601(c) without first satisfying the standing requirement would undermine the purpose of preserving the superior rights of parents encompassed by section 601(b)(2).

Sections 601(b)(2) and 601(c) interrelate in that section 601(b)(2) applies to those persons initiating custody proceedings and section 601(c) applies to those persons seeking to intervene in previously initiated proceedings. In our view, the standing requirements for nonparents necessarily apply to both sections to read them harmoniously. Therefore, we hold that appellants here must show that Eric was not in the physical custody of defendant at the time appellants sought custody under either section 601(b)(2) or section 601(c).

■ As we have previously stated, there has been no evidentiary hearing in this case regarding who had physical custody of Eric at the time of his mother's death. Physical custody has been construed as meaning something more than mere physical possession of the child at the time custody litigation is initiated. (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 491 N.E.2d 1150; *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 453 N.E.2d 835; *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 440 N.E.2d 1036.) In this case it is clear from the pleadings on file that at the time of Ms. Nicholas' death, defendant was not in actual physical possession of Eric. Defendant filed two petitions of *habeas corpus*, from which an *ex parte* hearing was held and an order of *habeas corpus* entered. It further appears that during the period from July 29, 1987, to August 27, 1987, defendant gained actual physical custody of Eric although we find no court order actually granting custody to defendant until August 27, 1987, when the court stated on record that defendant "has custody."

In *Barokas,* a mother had temporarily placed her child with her sister. A third party then removed the child from the sister's home and filed a custody petition under the IMDMA. The mother filed a special appearance and a motion to dismiss under oath contesting petitioner's standing. The motion and accompanying affidavit refuted that petitioners gained physical custody of the minor by any lawful act. The trial court found that it had jurisdiction of the subject matter and denied the mother's motion to dismiss based upon the affidavits,

motions and arguments of counsel. The case then proceeded to trial and custody was awarded to petitioners. On appeal the court held that physical custody as defined in IMDMA section 601(b)(2) is not lost by a parent every time the parent's child spends an overnight visit with a friend or relative and that physical custody is not relinquished when the task of parenting is performed in a less than adequate manner. Moreover, a parent cannot be deprived of physical custody by a third party for purposes of acquiring standing. (*Barokas*, 109 Ill. App. 3d at 544, 440 N.E.2d at 1042.) The court then noted that although there was a special hearing on the issue of standing, no evidence was taken. (*Barokas*, 109 Ill. App. 3d at 544, 440 N.E.2d at 1049.) Therefore, the court reversed the trial court and held that the mother was "entitled to a hearing and an opportunity to present evidence on the jurisdiction and standing issue before proceeding to a consideration of the merits of the custody petition." *Barokas*, 109 Ill. App. 3d at 544, 440 N.E.2d at 1042.

In *Menconi*, the father placed his child with the child's paternal grandparents following the mother's death. The child lived for the most part with the grandparents for 6½ years. Although there were several instances within those years when the child would return to live with the father at his request, those intervals were for short periods of time and the child would again be returned to the grandparents. The father then forcibly removed the child from the grandparents and refused to return her when requested to do so. Four days later the grandparents petitioned the court for custody. The father filed a motion to strike and dismiss contending that petitioners lacked standing under IMDMA sections 601(b)(2). The trial court rejected the father's jurisdictional challenge. (*Menconi*, 117 Ill. App. 3d at 395, 453 N.E.2d at 837.) After reiterating the standing requirements and policies therefor under section 601(b)(2), the appellate court stated that while in *Barokas* strict compliance with section 601(b)(2) was necessitated because of a parent's right to the care, custody and control of his child, "that right is not absolute [citation] and does not require a rigid and unthinking construction of section 601(b)(2)." (*Menconi*, 117 Ill. App. 3d at 398, 453 N.E.2d at 838.) Thus the court found that the voluntary nature of the initial transfer, coupled with the lengthy and integrating care provided by the grandparents in their home, was sufficient to divest the father of physical custody of the child. (*Menconi*, 117 Ill. App. 3d at 398, 453 N.E.2d at 839.) The court further found that the four days between the father's removal of the child and the grandparents' filing of the custody petition was not sufficient to reinvest physical custody of the child with the father. *Menconi*, 117 Ill.

App. 3d at 399, 453 N.E.2d at 839.

In *Peterson*, the court first stated that *Barokas* and *Menconi* correctly illustrated that the standing requirement under section 601(b)(2) should not turn on who is in actual physical custody of the child at the moment of the custody litigation. To hold otherwise would encourage abductions of minors in order to satisfy the literal terms of the standing requirements. (*Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1152-53.) However, the court held that a father had physical custody of his child upon the mother's death where the father had been found a fit person for custody in the original dissolution proceeding, had exercised regular visitation twice a week, had lived on the same block, and the mother lived with and had custody of the child until her death even though the grandparents were helpful in taking care of the child. *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153.

The trial judge stated that he was impressed with the similarity between the facts in *Peterson* and the present case; further, that in chambers, both counsel indicated the child to be presently in the physical custody of the father. Therefore, the court determined that under *Peterson*, appellants were not in the proper forum for determining the best interest of the child as they had no standing under section 601(b)(2) to petition the court for custody.

We acknowledge that the facts in *Peterson* appear similar to the present case. In *Peterson*, however, the court apparently had facts before it to make a decision as to who was in physical custody of the minor at the relevant times and for making the determination that the father had not voluntarily relinquished custody. We presume that information derived from some sort of evidentiary hearing. Nevertheless, the previously cited authorities stand for the proposition that physical custody, as defined in section 601(b)(2), requires a determination of who was providing for the care, custody and welfare of the child prior to the initiation of custody proceedings. In this case, defendant was clearly not in actual physical possession of Eric prior to his initiation of *habeas corpus* and custody proceedings. We are unable to determine whether he had physical custody of Eric, as that term has been defined, even in light of *Peterson*, because we have no facts from which to base such a decision.

■ It is clearly the law in Illinois that upon the death of the custodial parent, the noncustodial parent is not immediately vested with custody. (*Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 416 N.E.2d 1140; *In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 510 N.E.2d 555.) If such were the case, then the purpose of section 601(b)(2) would be severely hampered.

Based upon our reading of *Peterson, Barokas* and *Menconi,* we believe that appellants have alleged sufficient facts to be entitled to an evidentiary hearing on the issue of standing as required by IMDMA section 601(b)(2). Appellants' motion to intervene alleged, among other things, that Eric was not in the physical custody of his father.

We therefore hold that appellants are entitled to an evidentiary hearing to determine who had physical custody of Eric at the time of his mother's death as the term physical custody has been defined by the case law cited above.

The decision of the trial court is reversed and the cause remanded for evidentiary hearing consistent with this opinion.

Reversed and remanded with directions.

STOUDER and HEIPLE, JJ., concur.