*In re* MARRIAGE OF RANDY GUSTAFSON, Petitioner-Appellee, and PAULA GUSTAFSON, Respondent (Charles Robert Stone *et al.*, Intervenors-Appellants).

Fourth District   No. 4—88—0906

Opinion filed April 6, 1989.

Arthur M. Lerner, of Lerner & Kirchner, of Champaign, for appellants.

Ronald E. Boyer, of Boyer & Thompson, Ltd., of Watseka, for appellee.

JUSTICE LUND delivered the opinion of the court:

The circuit court of Ford County denied the petition of Charles Robert Stone and Mildred Helen Stone for intervention and custody, under the authority of section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2)), in a custody modification proceeding, wherein petitioner Randy Gustafson, former son-in-law of the Stones, was seeking custody of his daughters, Shannon Michelle Gustafson and Sarah Lindsey Gustafson, from respondent Paula Gustafson, his former wife. The Stones appeal.

This is a case of first impression. Section 601 of the Act provides, and has provided since the October 31, 1977, effective date of the Act, as follows:

"Jurisdiction—Commencement of Proceeding. (a) A court of this State competent to decide child custody matters has jurisdiction to make a child custody determination in original or modification proceedings as provided in Section 4 of the Uniform Child Custody Jurisdiction Act as adopted by this State.

(b) A child custody proceeding is commenced in the court:

(1) by a parent, by filing a petition:

(i) for dissolution of marriage or legal separation or declaration of invalidity of marriage; or

(ii) for custody of the child, in the county in which he is permanently resident or found; or

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents.

(c) Notice of a child custody proceeding shall be given to the child's parents, guardian and custodian, who may appear, be heard, and file a responsive pleading. The court, upon showing of good cause, may permit intervention of other interested parties." Ill. Rev. Stat. 1987, ch. 40, pars. 601(a), (b), (c).

The Stones contend they have standing to intervene and seek custody under section 601(b)(2), arguing that respondent no longer has physical custody of Shannon and Sarah, having transferred physical custody to the Stones. They further contend the dissolution judgment filed June 10, 1983, when awarding custody to respondent, effectively deprived petitioner of physical custody, although granting reasonable visitation rights and finding both father and mother fit parents. The Stones alternatively contend petitioner gave up physical custody status by acquiescing in the Stones taking physical custody.

■■ Courts have held that grandparents do not have standing under section 601(b)(2) where a custodial parent dies while living, together with the child, at the grandparents' residence, and where the noncustodial parent has provided support and visitation. (*In re Custody of Peterson* (1986), 112 Ill. 2d 48, 491 N.E.2d 1150; *In re Custody of O'Rourke* (1987), 160 Ill. App. 3d 584, 514 N.E.2d 6.) Hearings have been required when there was some doubt whether a parent had surrendered physical custody, with the burden placed upon the nonparent intervenor to establish the required allegation of no parent having physical custody. *In re Marriage of Santa Cruz* (1988), 172 Ill. App. 3d 775, 527 N.E.2d 131; *In re Marriage of Nicholas* (1988), 170 Ill. App. 3d 171, 524 N.E.2d 728.

■■ A custody dispute litigated under section 601(b)(2) would be decided upon the best interests of the children. If the Stones were to seek custody under the provisions of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq.*) or the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501 *et seq.*), they would be burdened with a comparatively strict standard of those acts in contrast to the best interests test. See *Santa Cruz*, 172 Ill. App. 3d at 782, 527 N.E.2d at 135.

The facts presented by the record are relatively simple. Shannon, age 12, and Sarah, age 7, are the children of petitioner and respondent. A Ford County circuit court dissolution judgment, filed June 10, 1983, awarded custody of the two girls to respondent, subject to petitioner's right of reasonable visitation. Both parents were found to be fit parents. Petitioner was to pay $165 per month per child for child support. This amount was increased to $180 per month per child as of January 1, 1987, pursuant to an order entered October 21, 1987.

Mildred Helen Stone and Charles Robert Stone are the parents of respondent. Respondent has not lived with her parents since graduating from high school. On August 15, 1988, respondent deliv-

ered Shannon and Sarah to the Stones in Paxton, Illinois, saying she could no longer care for them. The two girls began living with the Stones, with the Stones providing for them. Petitioner, who lives in Gilman, Illinois, has paid support and, prior to August 15, exercised his visitation rights. On October 11, 1988, after discovery of the transfer by respondent, petitioner filed a petition for modification of custody. The Stones, in turn, filed a "Petition to Intervene and for Custody" on October 19, 1988. Following a hearing on November 7, 1988, the trial court, on November 17, 1988, entered an order denying the Stones standing under section 601(b)(2), saying, in part:

"In this case, the mother was awarded custody in the marital settlement agreement adopted by the court and incorporated in the judgment of dissolution entered on June 10, 1983. She lived separately from her parents and had the children with her until late August, 1988, when she told her parents she could not care for them and asked them to take care of the children. At that time the children moved into their grandparents' home and were enrolled in the fall semester of public school from that address. On October 11, 1988, the father filed a petition seeking, *inter alia*, a change of custody to him.

The mother had legal custody from June 10, 1983, forward. Legal custody cannot be changed except by court order. The grandparents came into physical possession of the children through the fortuitous occurrence of the mother leaving them there. This is exactly the kind of circumstance the cases indicate the statute does not extend standing to. A party cannot come into possession of the children by abduction or collusion and thus obtain standing. Such a rule would encourage that conduct and discourage the statutory intent.

There may well be circumstances where one parent leaves children with third parties and the third parties obtain physical custody through that act. Perhaps the whereabouts of the other parent is unknown, or the other parent is incapacitated, or dead, or simply unwilling to accept custody. Under those circumstances the third party could well be found to have physical custody and thus have standing under the statute to petition for legal custody. Intervening petitioners have offered no evidence that this is that case.

The petition for leave to intervene is denied."

Regardless of the Stones' allegation, the evidence does not indi-

cate petitioner acquiesced in, or agreed to, the transfer of the two girls to the Stones.

On appeal, we are confronted with defining "physical custody" as it is used and intended to be used under section 601(b)(2).

Our supreme court's only pronouncement relating to section 601(b)(2) standing is set forth in *Peterson* (112 Ill. 2d 48, 491 N.E.2d 1150), where the dissolution judgment found both parents fit, but awarded custody to the mother. The mother, while terminally ill, lived with her parents, who assisted in the care of the child of the parties. The father regularly exercised his visitation and lived in the same block. Upon the mother's death, the grandparents sought custody, arguing standing under section 601(b)(2). The supreme court held that the father had physical custody of the child upon the mother's death and denied the grandparents' standing claim.

The *Peterson* decision, at first blush, would appear to repudiate the Illinois decisions holding that upon the death of the custodial parent, the noncustodial parent is not immediately vested with custody. (See *Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 416 N.E.2d 1140; *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184.) However, in *Milenkovic*, the custodial mother was murdered, allegedly by the father, and the children were placed in the temporary custody of a nonparent. In *Mackie*, the mother and child lived with the grandparent from June 1960 until the mother's death on October 5, 1964, and the child continued to live with the grandmother thereafter. From June 1960 until October 1964, the father had only seen the child on one occasion and, then, by chance.

The second district opinion in *In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 510 N.E.2d 555, appeared to carry on the *Milenkovic* and *Mackie* rule, while recognizing the *Peterson* case. The *McCarthy* court said:

> "To have standing under section 601(b)(2), petitioners must prove that, upon the death of Yvonne McCarthy on July 12, 1985, Nicole and Clayton, Jr., were not in the physical custody of the respondent. It has long been the law in Illinois that the death of a custodial parent after a final divorce judgment has been entered does not automatically revert custody to the surviving parent. (*Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 212.) When a divorced custodial parent dies, the court has the power to determine who should have custody of a child even though the legal custody of the child is not in anyone immediately following the death of the legal custodian. (93 Ill. App. 3d 204, 212.) This reasoning arises

from the well-established concept that the best interests of the children are the foremost considerations in the custody determinations. Ill. Rev. Stat. 1985, ch. 40, par. 602; *In re Wheat* (1979), 68 Ill. App. 3d 471.

In the instant case, respondent did *not* have physical custody of the minor children immediately after Yvonne's fatal accident. Respondent sought physical possession by filing a petition for custody on July 15, 1985." (Emphasis in original.) *McCarthy*, 157 Ill. App. 3d at 383, 510 N.E.2d at 558.

We note the *McCarthy* court was basically concerned with the father's 11-month delay in objecting to the maternal grandparents' and maternal aunt's intervention under section 601(b)(2). *McCarthy* reversed the trial court, which had dismissed the intervenors, based upon the *Peterson* decision.

In *O'Rourke*, the third district affirmed the dismissal of the maternal grandparents without hearing, where the mother, who had been granted custody by the dissolution judgment, died and the father sought custody. The intervention was sought under section 601(c), but the affirmance used lack of standing under section 601(b)(2) as justification. The *O'Rourke* court said:

"The final error asserted by the petitioners is that the trial court erred in granting a change of custody to the natural father without any findings of fact as required in contested custody cases. (See *In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 484 N.E.2d 1175.) The instant case cannot be considered a contested' custody case once the Dickinsons have been dismissed from the proceeding. The supreme court in *Peterson* stated that, when the custodial parent dies, the minor child will then be considered to be in the physical custody of the surviving natural parent even though the child is actually staying with someone else. This is a departure from earlier cases which held that the death of a custodial parent after a divorce judgment had been entered does not automatically revert custody to the surviving parent. (*E.g., Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 416 N.E.2d 1140; *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184.) In the absence of any indication that the father would not be a fit custodian for his two daughters, we must consider the final order granting custody to him as a confirmation of the change in custody which had already occurred. We hold that order to have been properly entered." *O'Rourke*, 160 Ill. App. 3d at 587-88, 514 N.E.2d at 8.

The second district decision in *Santa Cruz* (172 Ill. App. 3d 775, 527 N.E.2d 131) was filed on August 1, 1988, and involved a dispute between the grandmother and the daughter over custody of the daughter's young child. The trial court's dismissal of the grandmother's intervention because of the lack of standing under section 601(b)(2) was affirmed. The *Santa Cruz* opinion carefully analyzed most, if not all, of the relevant cases and specifically recognized a natural parent's paramount right to the care, custody, and control of his or her child or children, citing *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231. (See *Santa Cruz*, 172 Ill. App. 3d at 782, 527 N.E.2d at 135.) The *Santa Cruz* opinion noted "interestingly" the above-quoted statement from the *O'Rourke* opinion.

In the present case, we have the custodial parent seemingly surrendering her custodial possession by delivering the child to her parents. We must determine whether the grandparents can seek custody under section 601(b)(2), thus placing the natural father in the position of litigating the custodial issue on the basis of best interests of the children. We note the validity of the trial court's suggestion when it emphasized the importance of the dissolution court's sole jurisdiction to change physical custody.

The *Peterson* case recognizes the inherent paramount right of a natural parent. Logically, a parent determined fit, who has maintained reasonable visitation and interest, should have the same rights whether the parent awarded custody dies or abandons the child or children. *In re Custody of Barokas* (1982), 109 Ill. App. 3d 536, 545, 440 N.E.2d 1036, 1042, which is referred to in *Peterson*, states "a natural parent's superior right to the care, custody and control of his child (*Townsend*) should not be deprived absent strict compliance with the statutory provisions involved."

The examination of the transcript of evidence of the November 7, 1988, hearing clearly indicates the Stones rested their claim to standing on the fact respondent had been awarded custody, and she had given up physical custody to them. The position taken was that they had physical custody, and neither parent had physical custody. There was no emphasis on petitioner's unfitness or acquiescence.

We conclude the wording of section 601(b)(2) was not intended to allow the Stones standing under the specific facts of this case. We emphasize that the presence of evidence of unfitness or acquiescence might call for a different conclusion. A decision to the contrary in the present case would be an open invitation for fraud in the custody process. An unfit or erring custodial parent should not be able

to encroach upon the superior rights of the noncustodial parent by transferring her physical custody to some otherwise fit third party.

The judgment of the circuit court of Ford County is affirmed.

Affirmed.

SPITZ, J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision of the majority to affirm and agree with the thorough explanation given in the majority opinion. I concur specially merely to respond to the logical argument of petitioners to intervene that "physical custody," as described in section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act), means physical custody in the ordinary sense, and the record is clear that neither parent had "physical custody" at times pertinent here. Ill. Rev. Stat. 1987, ch. 40, par. 601(b)(2).

The problem of statutory interpretation involved here arises because of tension between a very strong public policy of the State and the language of section 602 of the Act. The public policy is that which recognizes the paramount right of natural parents to the care, custody, and control of their children as explained by the majority and as set forth in the case of *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231. The statutory language is that of section 602(a) of the Act which states that in custody proceedings under the Act, "[t]he court shall determine custody in accordance with *the best interest of the child*." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 40, par. 602(a).

Accordingly, as the majority points out, persons having standing to proceed under section 601 of the Act can obtain custody of a child by merely proving that the best interests of the child would be served by that custody. Section 602(a)(1) of the Act does state that in making a custody determination, "the wishes of the child's parent or parents" shall be given consideration (Ill. Rev. Stat. 1987, ch. 40, par. 602(a)(1)), but that statement is insufficient to protect the paramount parental right enunciated in *Townsend*. Thus, when a parent having legal custody dies (*Peterson*, 112 Ill. 2d 48, 491 N.E.2d 1150; *O'Rourke*, 160 Ill. App. 3d 584, 514 N.E.2d 6) or leaves a child with others (*Santa Cruz*, 172 Ill. App. 3d 775, 527 N.E.2d 131) and the other parent has shown interest in the child and makes a timely request for legal custody, the courts narrowly construe the provisions of section 601(b)(2) which give nonparents standing to seek custody.

If the phrase "physical custody" be given its plain and ordinary meaning, one cannot accurately say that the noncustodial parent obtained "physical custody" of the child upon the death of the custodial parent in *Peterson* or *O'Rourke*. Rather, the decisions can only be based upon a theory that, because of the noncustodial parent's interest in the child and prompt request for custody, he obtained a constructive "physical custody." Similarly, here, where the father had shown interest in the children and made a request for legal custody in less than two months from the time the mother gave up her "physical custody," a constructive "physical custody" in the father is implied. This case differs from *Santa Cruz*, where the conduct of the custodial parent was not deemed to be a surrender of "physical custody," as the evidence here would indicate an abandonment of her "physical custody."

Under the strong public policy of this State of protecting the predominate rights of the natural father of these children to his care, custody, and control, he is protected from having to defend in a proceeding where he could be deprived of custody merely because the best interests of the children would be served in the custody of their grandparents. The petition to intervene alleged that the father "was not capable of providing a proper home for the children." As the majority has stated, if this is so, the children can only be protected by a proceeding (1) under the Juvenile Court Act of 1987 to determine if, upon going into the father's custody, the children are neglected or abused (Ill. Rev. Stat. 1987, ch. 37, par. 802—3), or dependent (Ill. Rev. Stat. 1987, ch. 37, par. 802—4); or (2) under the Adoption Act, to determine whether the father is an "unfit person" (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)).