*In re* MARRIAGE OF MARC A. BROWNFIELD, Petitioner, and JOAN M. MADRIGAL, f/k/a Joan Brownfield, Respondent-Appellant (Cynthia A. Brownfield, Intervenor-Appellee).

Fourth District   No. 4—95—0964

Argued May 14, 1996.—Opinion filed September 25, 1996.

COOK, P.J., and McCULLOUGH, J., specially concurring.

Michael Q. Jones (argued), of Novak & Jones, P.C., of Urbana, for appellant.

Betsy Pendleton Wong (argued), of Phebus, Winkelmann, Wong & Bramfeld, of Urbana, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

In January 1995, intervenor Cynthia Brownfield (Cindy), stepmother of two minor children, Shane and Tanya Brownfield (born April 10, 1985, and October 20, 1987, respectively), brought a petition for custody in the underlying dissolution action after the children's father, Marc Brownfield, died. The circuit court found Cindy had standing to seek custody and awarded custody of both children to Cindy.

The children's natural mother, Joan Madrigal (f/k/a Joan Brownfield), appeals arguing the court erred in holding Cindy had standing to seek custody of the children under section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/601(b)(2) (West 1994)). We conclude that the children were not in Joan's physical custody when Cindy filed her petition for custody and, therefore, affirm the circuit court's judgment that Cindy had standing to seek custody under the Act.

Petitioner Marc Brownfield and Joan were married on November 29, 1981. Two children were born to the parties: a son, Shane, and a daughter, Tanya. The parties separated in April 1988 and, on May 19, 1989, the court entered a judgment of dissolution of marriage. The judgment incorporated the marital settlement agreement of the parties which provided that Marc would receive custody of Shane and Joan would receive custody of Tanya, subject to liberal visitation by each party with the child not in his or her custody.

In September 1989, Joan asked Marc to take custody of Tanya because Joan was experiencing physical difficulties and believed it would be in Tanya's best interest to live with her father and brother. Thus, on September 28, 1989, pursuant to a stipulation by the parties, the court entered an order modifying the judgment order of dissolution and awarding Marc the permanent care, custody and control of both children, subject to liberal rights of visitation with Joan. The court also ordered Joan to pay Marc $200 per month per child as child support, beginning in September 1989.

Intervenor Cindy and her daughter Emily moved into Marc's

home in June 1990. Marc and Cindy were married on April 1, 1991. Marc, Cindy, Emily, Shane, and Tanya resided together as a family from June 1990 until Marc's death from cancer on January 10, 1995.

On January 10, 1995, Cindy filed a petition to intervene in the parties' dissolution action and a petition for temporary and permanent custody of Shane and Tanya. That day, the court entered an order indicating Cindy's petition to intervene should be allowed and awarding her temporary emergency custody of the children. Joan filed her answer to Cindy's petition on February 2, 1995, in which she requested permanent custody of the children. Joan raised no affirmative defenses to Cindy's petition for custody in her answer.

On March 1, 1995, a hearing on temporary custody was held, at the conclusion of which the court awarded Cindy temporary custody of the children and set the hearing on permanent custody for August 23, 1995. Then, on July 17, 1995, Joan filed a motion to dismiss Cindy's petition, asserting for the first time Cindy lacked standing to seek custody of the children under section 601(b)(2) of the Act. A hearing on the motion to dismiss was held on August 4, 1995, and, on August 17, 1995, the court denied the motion because it found the standing issue involved disputed issues of material fact which could not be resolved in a summary manner.

A full evidentiary hearing took place on August 23 and 24, 1995, on the issues of standing and permanent custody. On September 7, 1995, the court entered its order, finding the evidence established that Cindy had standing to seek custody of the children and that, based on the evidence presented as to the children's best interests, the presumption in favor of Joan as custodial parent under the superior rights doctrine had been overcome. Thus, the court awarded the permanent care, custody and control of the children to Cindy, subject to Joan's visitation rights, which are detailed in the order.

Joan filed a motion to reconsider on September 20, 1995, asserting the court erred (1) in its determination of the standing issue, (2) in its best interests determination, and (3) in its determination the presumption in favor of Joan as to custody of the children had been overcome. The court denied the motion to reconsider on November 9, 1995, and this appeal followed.

As a threshold issue, Cindy argues Joan waived the issue of standing by not raising it either in a motion to dismiss, filed before her answer, or in her answer. Joan filed her answer in February 1995 and a temporary custody hearing was held in March 1995, yet she did not raise the affirmative defense of standing until she filed her motion to dismiss in July 1995.

■ Lack of standing is an affirmative defense to be raised within

the time for pleading. 735 ILCS 5/2—619(a)(9) (West 1994). However, the trial court has discretion to allow parties to file late pleadings and may do so unless it can be demonstrated the opposing party would be prejudiced by the late filing. *In re Custody of McCarthy*, 157 Ill. App. 3d 377, 380-81, 510 N.E.2d 555, 557 (1987).

The record does not strongly suggest Cindy was prejudiced by the late presentation of the standing issue. The scope of inquiry is very broad at a best interests hearing and the facts brought out at such a hearing are frequently also relevant to the determination of standing. Because the court ruled on the motion to dismiss only after a full evidentiary hearing, at which Cindy was able to present substantial evidence on the standing issue, we conclude the court did not abuse its discretion in allowing Joan to raise the affirmative defense in her motion to dismiss filed July 17, 1995.

■ We next address the substance of Joan's contention that the circuit court erred in finding Cindy had standing to seek custody of the children under the Act. Section 601(b)(2) of the Act sets forth:

"(b) A child custody proceeding is commenced in the court:

\* \* \*

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but *only if he is not in the physical custody of one of his parents.*" (Emphasis added.) 750 ILCS 5/601(b)(2) (West 1994).

The superior right of a natural parent to custody of his or her child is recognized and protected in the Act by requiring a nonparent seeking custody to meet the standing requirement embodied in section 601(b)(2) of the Act before being considered for custody under the best interests standard set forth in section 602 of the Act (750 ILCS 5/602 (West 1994)). *In re Petition of Kirchner*, 164 Ill. 2d 468, 491, 649 N.E.2d 324, 335 (1995). To establish standing, a nonparent must show a child is "not in the physical custody of one of his parents" before she can seek custody of the child. 750 ILCS 5/601(b)(2) (West 1994); see also *Kirchner*, 164 Ill. 2d at 491, 649 N.E.2d at 335; *In re Custody of Barokas*, 109 Ill. App. 3d 536, 541, 440 N.E.2d 1036, 1040 (1982).

Courts have consistently rejected the argument that physical possession equals physical custody; the term "physical custody" encompasses the legal right to the care, physical possession, and control of a child. *Kirchner*, 164 Ill. 2d at 491, 649 N.E.2d at 335; see also *In re Custody of Peterson*, 112 Ill. 2d 48, 53-54, 491 N.E.2d 1150, 1152-53 (1986).

Joan presents two arguments in support of her position that

Cindy lacks standing under section 601(b)(2) of the Act. First, she asserts that under *Peterson* and its progeny, upon the death of Marc, she was vested with constructive physical custody of the children. See *In re Marriage of Gustafson*, 181 Ill. App. 3d 472, 536 N.E.2d 1359 (1989). Joan's second argument is that in determining whether she voluntarily relinquished custody of the children, the court should look at her actions after the death of Marc, not before.

In the dissolution action in *Peterson*, both parents sought custody of the child and both were found fit to have custody, yet the trial court awarded the mother custody, subject to the father's liberal rights of visitation. *Peterson*, 112 Ill. 2d at 51, 491 N.E.2d at 1151. The child and her mother lived with the mother's parents, who assisted the mother in caring for the child, due to the mother's illness. The father lived on the same block as the child and mother and regularly exercised his visitation rights. When the mother eventually died of her illness, the grandparents would not release the child to her father, and he petitioned for custody under the Act.

The grandparents asserted a claim to custody, which the father immediately contested, arguing that under section 601(b)(2) of the Act, the grandparents did not have standing to seek custody of his child. The supreme court agreed, holding that the grandparents did not have standing merely because they were in physical possession of the child when the petition for custody was filed. The court reasoned that as the mother had been in constant physical custody of the child and the father had reasonably exercised his rights of visitation, the father gained physical custody upon the mother's death, thus barring the grandparents from having standing to seek custody. *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153.

■ Although under Illinois law a noncustodial parent is not automatically vested with custody upon the death of the custodial parent (*Milenkovic v. Milenkovic*, 93 Ill. App. 3d 204, 212, 416 N.E.2d 1140, 1145 (1981); *McCarthy*, 157 Ill. App. 3d at 383, 510 N.E.2d at 558; see also *Mackie v. Mackie*, 88 Ill. App. 2d 61, 67, 232 N.E.2d 184, 188 (1967)), *Peterson* established that when the noncustodial parent has not been found unfit, and has regularly exercised visitation and demonstrated interest in the child, it is proper that he be vested with custody upon the death of the custodial parent. *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153.

In *Gustafson*, relied upon by Joan, this court noted that immediately following the death of the custodial parent, legal custody of a child is not in anyone, since the death of a custodial parent does not automatically revert custody to the surviving parent. *Gustafson*, 181 Ill. App. 3d at 477, 536 N.E.2d at 1361-62. The *Gustafson* court

commented on the trial court's role in modifying custody orders, stating "[w]e note the validity of the trial court's suggestion when it emphasized the importance of the dissolution court's sole jurisdiction to change physical custody." *Gustafson*, 181 Ill. App. 3d at 479, 536 N.E.2d at 1362. However, consistent with *Peterson*, the court held that a parent determined fit, who had maintained reasonable visitation and interest in his child, should not be required to litigate the issue of custody at a best interests hearing and, therefore, was vested with custody following the custodial parent's abandonment of the children. *Gustafson*, 181 Ill. App. 3d at 479, 536 N.E.2d at 1363.

The present case is distinguishable from *Peterson* and *Gustafson* in several respects. First, in *Peterson*, the custody arrangement was determined by the court, rather than by agreement of the parties, as is the case here. We agree with the statement by Justice Dunn in his dissent in *In re Marriage of Carey*, 188 Ill. App. 3d 1040, 1053, 544 N.E.2d 1293, 1301 (1989) (Dunn, J., dissenting), that an agreement by one spouse that the other spouse have custody of their child is not tantamount to an abandonment or loss of interest in the child. Nonetheless, while one parent's agreement that the other receive custody should not be dispositive on the issue of voluntary relinquishment, such an agreement, and the reasons behind it, are factors which the court can properly consider.

Another factor courts look to when a parent allows someone else to maintain physical possession of his/her child is that parent's intentions and expectations when relinquishing the child to the care of another. See *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153; *Carey*, 188 Ill. App. 3d at 1049, 544 N.E.2d at 1298; *Montgomery v. Roudez*, 156 Ill. App. 3d 262, 509 N.E.2d 499 (1987). One point the court found significant in *Peterson* was that in the time the child lived with her mother and grandparents, it would not have occurred to the natural father that the grandparents were developing a position of standing by living with the child.

Here, Joan was aware of Marc's and Cindy's relationship and knew that a mother-child relationship was developing between Cindy and the children over the years. Yet, even knowing that strong bonds were forming between Cindy and the children, Joan chose to live in distant states, visited with the children infrequently, and never attempted to have a court modify her custody arrangement with Marc. In relinquishing physical possession of the children indefinitely and maintaining only an attenuated relationship with them while they were being reared by Marc and Cindy, Joan must reasonably have expected that parent-child relationships were developing between Cindy and the children. This is in contrast with *Peterson*, where the

court found there was no evidence a parental relationship had developed between the child and her grandparents. See *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153.

Even if we do not give significant weight to Joan's custody agreement with Marc or her expectations as to the kind of relationships that would result therefrom, there is substantial additional evidence indicating that she voluntarily relinquished custody of the children, which brings us to the most significant difference between *Peterson* and the present case.

In *Peterson*, the court found it extremely significant that the father had vigorously, regularly exercised his visitation rights. *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153. In the present case, the evidence demonstrated that from September 1989 until after Marc's death in 1995, Joan visited with the children only four times: specifically, in the summer of 1990, the winter and summer of 1991, and the summer of 1992. After the visit in the summer of 1992, Joan did not again visit with the children until March 1995, when she traveled to Illinois for the hearing on temporary custody. Joan did not contact Marc to request any visitation with the children in 1994. This is despite the fact that she had been granted liberal visitation rights and Marc and Cindy had been cooperative in arranging visits in the past. We agree with the trial court's conclusion that Marc and Cindy did not impede Joan in developing a relationship with the children, as she has contended.

Not only did Joan fail to exercise visitation regularly, she also failed to maintain regular correspondence or telephone contact with the children. At the hearing, she admitted that she did not telephone the children or write to them monthly, or even bimonthly. One fact which is indicative of the infrequency of contact between Joan and the children is that Joan attempted to send a package to Tanya for her birthday in September 1994, only to discover Marc, Cindy, and the children had moved to a new house four months earlier in June 1994.

As Justice Green observed in his special concurrence in *Gustafson*, if a noncustodial parent continually shows interest in a child and promptly seeks custody upon the death of the custodial parent, courts will imply a constructive physical custody in favor of the noncustodial parent. *Gustafson*, 181 Ill. App. 3d at 481, 536 N.E.2d at 1364 (Green, J., specially concurring); see *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153. Here, however, the evidence demonstrated Joan failed to maintain the kind of active and ongoing contact with the children as contemplated in *Peterson*.

■ In addition to the specific rules the courts have fashioned for

custody situations where the custodial parent has died or manifestly abandoned a child, the courts have indicated several factors which should be considered in making the determination of whether a child is "not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 1994). Such factors include (1) who was responsible for the care and welfare of the child prior to the initiation of custody proceedings; (2) the manner in which physical possession of a child was acquired; and (3) the nature and duration of the possession. *In re Marriage of Santa Cruz*, 172 Ill. App. 3d 775, 783, 527 N.E.2d 131, 136 (1988); *In re Marriage of Sechrest*, 202 Ill. App. 3d 865, 871, 560 N.E.2d 1212, 1215 (1990); see also *In re Custody of Menconi*, 117 Ill. App. 3d 394, 398-99, 453 N.E.2d 835, 839 (1983); *Barokas*, 109 Ill. App. 3d at 543, 440 N.E.2d at 1041; *In re Marriage of Nicholas*, 170 Ill. App. 3d 171, 178, 524 N.E.2d 728, 733 (1988).

■ While the supreme court indicated in *Kirchner* no combination of these factors is sufficient to confer standing on a nonparent if there has not been a voluntary relinquishment of custody by the parent (*Kirchner*, 164 Ill. 2d at 493, 694 N.E.2d at 335-36), we find that all of the above factors are relevant to the determination of whether there has been voluntary relinquishment. An analysis of the above factors is necessary because, aside from a situation of abandonment, a parent does not typically state "I hereby voluntarily, indefinitely relinquish custody of my child," although her actions and the surrounding circumstances may indicate that is exactly what she is doing.

*Menconi*, which was cited with approval in *Peterson*, provides an example of when a parent may be deemed to have voluntarily relinquished physical custody of his child. There, the child's natural mother died shortly after the birth of the child and the father placed the child in the home of his parents. The daughter lived with the grandparents for 6 1/2 years before the father returned and attempted to regain custody forcibly. In the 6 1/2 years, the father had reclaimed physical possession of the child several times, for periods of a few weeks, but invariably returned the child to his parents' care. *Menconi*, 117 Ill. App. 3d at 395, 453 N.E.2d at 836-37. Examining the above factors, the court found that based upon the voluntary nature of the father's transfer of the child to his parents, and the length of time he left her with them, he had relinquished custody indefinitely and, therefore, did not have physical custody of her when the custody petition was filed. *Menconi*, 117 Ill. App. 3d at 398-99, 453 N.E.2d at 839.

In contrast is *Barokas* (109 Ill. App. 3d 536, 440 N.E.2d 1036), where the mother placed her child in the temporary care of the

child's adult sister and the sister then turned the child over to a third party without the mother's permission. Once in possession of the child, the third party filed for custody under section 601(b)(2) of the Act. The court held the mother had never relinquished physical custody of the child within the section's meaning and, therefore, the third party did not have standing to seek custody.

The case most factually similar to the present controversy is *Carey*. There, as in the present case, the natural mother agreed in the dissolution action that the father be awarded permanent custody of their child. *Carey*, 188 Ill. App. 3d at 1042, 544 N.E.2d at 1294. Later, the father remarried and petitioned the court to remove the child from Illinois to Virginia, where he and his new wife had been transferred. The natural mother did not contest the removal of the child from the state. The father later died and when the natural mother sought a modification of the custody agreement, the stepmother asserted a claim for custody which the natural mother contested, arguing the stepmother lacked standing.

In making its determination on standing, the court noted that in the agreement incorporated into the judgment order of dissolution, the natural mother gave permanent legal custody of the child to his father. *Carey*, 188 Ill. App. 3d at 1042-43, 544 N.E.2d at 1294. Primarily based on this fact, and the fact that the natural mother did not contest the child's move out of state, the court found the child's natural mother had previously voluntarily relinquished physical custody of him. *Carey*, 188 Ill. App. 3d at 1049, 544 N.E.2d at 1299. The court further found that although the natural mother had exercised her visitation rights frequently, she had not provided for the care, custody, and welfare of the child in such a manner that, when the father died, she was vested with physical custody. *Carey*, 188 Ill. App. 3d at 1049, 544 N.E.2d at 1299. The court stated upon the death of the father, custody of the child did not automatically revert to the natural mother; rather, the proper procedure was for her to file a petition for modification of custody under section 610 of the Act (750 ILCS 5/610 (West 1994)) so the court could determine custody according to the best interest of the child. *Carey*, 188 Ill. App. 3d at 1051, 544 N.E.2d at 1300.

This is despite the fact that the court found the natural mother had frequently exercised her visitation rights, including 18 overnight visits within the first year after the child's move out of state, and that visitation continued in that manner until the father died, three years later. *Carey*, 188 Ill. App. 3d at 1043, 544 N.E.2d at 1294.

The only notable distinctions between *Carey* and *Peterson* are (1) the natural mother in *Carey* did not seek custody in the dissolution

proceeding; and (2) the natural mother and the child lived a significant distance from each other in *Carey*, resulting in less frequent visitation than the father in *Peterson* enjoyed. The *Carey* court seemed to place great significance on the fact that the natural mother agreed to the father's custody of the child and the move out of state. (However, we do not find that such agreements, in and of themselves, are sufficient to constitute voluntary relinquishment of physical custody.) Last, the court found it significant that the stepmother had provided for the care and welfare of the child for several years prior to the action for custody modification.

Applying the facts of the present case to the first of the three factors recited in *Santa Cruz*, above, the record is clear that Cindy and Marc were responsible for the care and welfare of the children prior to the initiation of this custody proceeding. Joan had been living in either California, Colorado, or Wyoming since the parties separated in 1988, and has not been responsible for the care of either child since at least September 1989.

With respect to child support, Joan did pay Marc one lump sum of approximately $36,000 in 1988, after receiving an inheritance of approximately $250,000, which she expected would satisfy her support obligations as to Shane through his minority. In the September 1989 order modifying custody, Joan was ordered to pay Marc $200 per month per child. Joan paid Marc nothing toward Tanya's support in 1989 or 1990, $900 in 1991, $400 in 1992, $600 in 1993, $250 in 1994, and nothing in 1995. Joan testified regarding her finances and, although the evidence demonstrated she is not adept at managing her money, her actions over the years also indicated she did not consider her child support obligation a high priority. The evidence clearly demonstrated Marc and Cindy were responsible for the financial support of the children and provided for their care and welfare since 1990.

With respect to the second factor, Marc and Cindy acquired physical possession of the children as a result of the agreement between Joan and Marc with respect to Shane and by Joan's subsequent voluntary transfer of Tanya to Marc in September 1989. Joan alleged this transfer was primarily due to health problems she was having at the time. However, her testimony established these "health problems" were merely hives or skin lesions occasioned by stress.

Finally, the nature of the relationship between Cindy and the children has been one of mother-children and has been an ongoing, developing relationship since 1990. Although Joan did exercise visitation rights in 1990, 1991, and 1992, the trial judge characterized her relationship with the children as one of a "distant relative."

The evidence before the court established Joan voluntarily relinquished custody of her children indefinitely, within the meaning of section 601(b)(2) of the Act; thus, they cannot be said to have been in the custody of one of their parents when Cindy filed her petition for custody. Joan's failure to visit the children in the $2^1/2$ years preceding this custody action, failure to maintain regular contact with the children, and failure to regularly make child support payments all demonstrate the children were not in the physical custody of Joan when Cindy filed her petition.

Joan's argument that she relinquished custody to *Marc* but not to Cindy is unpersuasive. Cindy and Marc attended to all of the children's needs in the five years preceding this action and Cindy effectively assumed the role of mother to Joan's children. Joan fully supported such an arrangement and never attempted to augment the role she played in her children's lives.

■ Finally, we reject Joan's suggestion that we should look to her acts after, rather than before, Marc's death in determining whether she voluntarily relinquished custody. Whether a party has standing under section 601(b)(2) of the Act is determined by examining that party's status as of the date relief is sought. See *In re Marriage of Roberts*, 271 Ill. App. 3d 972, 981-82, 649 N.E.2d 1344, 1351 (1995). Cindy filed her petition for custody on the day Marc died; therefore, the question was whether, as of January 10, 1995, Joan had relinquished physical custody of the children. As concluded above, she had. Her actions since that date are irrelevant to the issue of Cindy's standing. For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

PRESIDING JUSTICE COOK, specially concurring:
I agree with the majority's disposition of this case, but I believe its reasoning is too restricted. In my view, the surviving spouse of a custodial parent should generally have standing to seek custody under section 601(b)(2) of the Act, even if that surviving spouse is not related by blood to the child. 750 ILCS 5/601(b)(2) (West 1994).

In *Carey*, the court found that a stepmother, the widow of the custodial father, had standing for two reasons: (1) a mother-son relationship existed between the stepmother and the child, and (2) the natural mother had voluntarily relinquished legal custody and agreed to the child's move out of state. *Carey*, 188 Ill. App. 3d at 1049, 544 N.E.2d at 1299. The dissent in *Carey* was critical of the court's reliance on factor (2). Making that factor the determinant "would only

serve to discourage amicable settlement of custody matters in dissolution proceedings." *Carey*, 188 Ill. App. 3d at 1053, 544 N.E.2d at 1301 (Dunn, J., dissenting).

In *Kirchner*, the supreme court further considered the standing requirement, which is found in the statutory language that a nonparent may petition for custody of the child "only if he is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 1994). *Kirchner* stated, "[t]he determination that a parent does not have physical custody of a child turns not on possession; rather, it requires that that parent somehow has voluntarily and indefinitely relinquished custody of the child." *Kirchner*, 164 Ill. 2d at 491, 649 N.E.2d at 335. That language from *Kirchner* does seem to focus on factor (2), the conduct of the noncustodial biological parent, but *Kirchner* is a very different case on its facts from *Carey*. As the supreme court pointed out in *Kirchner*, "[i]n simple terms, Richard is in the Does' home without color of right." *Kirchner*, 164 Ill. 2d at 492, 649 N.E.2d at 335. The same cannot be said of a child whose custody has been awarded to one parent in a dissolution of marriage proceeding, even where the other parent has objected to that award. In the present case, the children were not in Cindy's home "without color of right." In my view, the fact that the parties have submitted their custody dispute to the dissolution court, and that court has awarded custody, satisfies the *Kirchner* requirement that there be a "voluntary relinquishment." *Kirchner* cited *Carey* with approval. *Kirchner*, 164 Ill. 2d at 492, 649 N.E.2d at 335.

Imagine a situation where the parents are divorced shortly after the child's birth, the father receives custody, then remarries, and the stepmother raises the child until he is 10 years old. If the natural mother did not agree to custody, and visited the child every few months (which the court finds to be reasonable under the circumstances), then under the majority's rule the court *cannot even consider* whether custody in the stepmother is in the best interest of the child. That is so even if the stepmother is the only mother the child has ever known. Perhaps custody in the natural mother would be an appropriate result in some such cases, but it is not the result which should be mandated in all cases, and I do not read *Kirchner* to require it.

I agree with the *Carey* dissent that we should not discourage the amicable settlement of custody matters. In my view, Cindy should have standing in this case even if Joan had not entered into the marital settlement agreement, even if Joan had not asked Marc to take custody of Tanya, and even if Joan had been able to exercise visitation more frequently. A court should not have to find that the natu-

ral mother is a bad person in order to find standing on the part of the stepmother. Because of the mother-child relationship in this case which developed over a period of five years, *with* color of right, the court should at least consider whether an award to Cindy is in the best interests of the children. Cindy is not an intermeddler in the affairs of these children.

If Cindy is found to have standing and the case is decided under the best interest of the child standard, the court will still give considerable weight to the right of the natural parent. *In re Custody of Townsend*, 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234 (1981). The first factor listed under the best interest of the child standard is "the wishes of the child's parent or parents as to his custody." 750 ILCS 5/602(a)(1) (West 1994).

I disagree with the *Carey* dissent that the only difference between that case and *Peterson* was that in *Peterson* the noncustodial parent contested custody during the dissolution proceedings. I agree with the *Carey* majority, which looked to factor (1), the relationship between the grandparents and the child. "Although the grandparents in *Peterson* provided a home and helped their ailing daughter care for the child, there was no indication that the grandparents had established any parental relationship with the child." *Carey*, 188 Ill. App. 3d at 1050, 544 N.E.2d at 1299. In *Peterson*, "Lynette was in the sole care of the Jadrychs only through the fortuitous occurrence of Felicia's death" at a time Felicia happened to be living with the Jadrychs. *Peterson*, 112 Ill. 2d at 54, 491 N.E.2d at 1153.

JUSTICE McCULLOUGH, specially concurring:

I agree with the determination that Cindy did have standing to petition for custody of the stepchildren.

I write separately only with respect to the weight to be given to the custody agreement and our approval of *Carey*.

It is important that the court give little weight to the custody agreement between Marc and Joan. The agreement was clearly in the children's best interests. We should and do encourage parents to help the trial courts settle custody. Parents who set aside a self-centered, parent ego, in favor of what is in the best interests of their children, should not be penalized. The noncustodial parent should not be in a weaker position in the event the custodial parent becomes deceased or incapacitated. A mother's conscientious and reasonable decision relinquishing custody to the father is not reason to deny her custodial rights when the father becomes deceased. Voluntary relinquishment must be based upon other evidence. I agree there is sufficient other evidence to determine Cindy has standing. I do have

concern that Cindy and Marc planned this proceeding as evidenced by the petition being filed the day Marc died. The evidence does not show, however, that Marc and Cindy impeded Joan in any way in maintaining her relationship with the children.

These cases are fact specific. Although I agree with the trial court here, I do not necessarily endorse the reviewing court's decision in *Carey*.