No. 3--00--0573

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

In
 
re
 MARRIAGE OF ) Appeal from the Circuit Court

WILLARD A. BOOTH, ) for the 12th Judicial Circuit,

Petitioner-Appellant, ) Will County, Illinois

) 

and ) No. 
99--D--464

) 

LORI ANN BOOTH, n/k/a, ) Honorable

Lori Ann Hunt, ) Ludwig Kuhar

Respondent-Appellee. ) Judge, Presiding

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Petitioner Willard Booth appeals the trial court’s decision granting respondent Lori Ann Booth, n/k/a Lori Ann Hunt, visitation privileges 
with his 14-year-old daughter.
  Because we determine that a parent may not bargain away the interests of a child by providing for stepparent visitation in a martial settlement agreement in contravention of Illinois law
,
 we reverse.

FACTS

Willard and Lori were married on November 23, 1991.  At the time, Willard was the custodial parent of Brittinie, his five-year-old daughter who was the product of a previous marriage.  In the spring of 1999, Willard filed a petition for dissolution of marriage.    On October 14, 1999, the trial court entered an agreed order for dissolution of marriage.  The order included a marital settlement agreement, which included a provision that stated "[w]ife is hereby awarded reasonable visitation with her step-daughter, Brittinie Booth, upon reasonable advanced notice."

Several months later, Lori filed a petition seeking to have the court order a specific visitation schedule.  Thereafter, Willard retained new legal counsel and filed a petition for relief from the judgment.  In his petition, Willard claimed that he consented to stepparent visitation without being properly informed by his former counsel of the terms of section 
607(b)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/607(b)(1.5) (West 1998)), a recently enacted statute that governs stepparent visitation.  
He requested that Lori be enjoined from visitation with Brittinie and that the October 14, 1999, judgment be vacated or, at a minimum, the provision regarding visitation be stricken.  Willard’s motion was dismissed by the court for failure to raise the issue prior to judgment.

At the hearing on Lori’s petition to set a visitation schedule,
 Willard testified that his
 previous attorney advised him to agree to reasonable visitation, but did not advise him to discuss the matter with Brittinie first.  Willard admitted that although he first saw the proposed written agreement on the same day the court entered its order, he approved the settlement and specifically acknowledged the provision 
regarding stepparent visitation.
  Even though the agreement provided for reasonable visitation, Brittinie and Lori have seen each other only two times since the divorce.

Lori testified that after she married Willard, she became Brittinie’s primary caregiver while Willard worked.  She attended Brittinie’s school and sports activities, and helped her with her homework.
  When Brittinie was older, they had a regular "girls night out."  After the separation, they went shopping together on one occasion, and she sent Brittinie cards and gifts.  Although she has repeatedly attempted to make arrangements to visit Brittinie, Willard has prevented them from seeing each other. 

The court conducted an 
in
 
camera
 interview of Brittinie.  Brittinie stated that she is 14 years old and that she was never told that her father had planned to agree to visitation.  
When asked whether she wanted to see Lori, she stated "I don’t want to go and see her" and "I don’t want to be forced to see her."  Brittinie also stated "I really don’t get along with her.  I don’t know why, but she’s [
sic
] just scares me."
  Brittinie also stated that she sees her natural mother and her half-brother almost every weekend and gets along well with them.

Shortly thereafter, the trial court ordered that Lori be granted visitation every other Monday evening, although no visitation was ordered during summer vacation.  Willard appealed the court’s decision.

ANALYSIS

On appeal, Willard argues that the provision in the martial settlement agreement regarding visitation is not enforceable because the agreed order was signed without Brittinie’s knowledge and consent, was signed under duress, and was signed after receiving improper advice from legal counsel.  Willard claims the trial court erred by striking his petition for relief from the judgment and claims the agreement was against Brittinie’s best interests.

This court will reverse a trial court’s decision regarding visitation if it determines that the court abused its discretion or if manifest injustice has been done to the child or parent. 
In re Marriage of Slayton
, 292 Ill. App. 3d 379, 685 N.E.2d 1038 (1997).

Under ordinary circumstances, a settlement agreement incorporated into a judgment for dissolution of marriage is a contract that is governed by principles of contract law because it is an agreement between the parties and not a judicial determination of the parties’ rights. 
In re Marriage of Schmidt
, 292 Ill. App. 3d 229, 684 N.E.2d 1355 (1997).  Nevertheless, a parent may not bargain away his child’s rights, and the court is not bound by any agreement that does not protect the child’s best interests. 
Blisset v. Blisset
, 123 Ill. 2d 161, 526 N.E.2d 125 
(1988).

Section 607(b)(1.5) of the Marriage Act
 provides that the court may grant reasonable visitation privileges to a stepparent if the court determines it is in the child’s best interests. 750 ILCS 5/607(b)(1.5) (West 1998).  S
ection 607(b)(1.5) also provides that "[a] petition for visitation privileges may be filed *** if the following circumstances are met: (A) the child is at least 12 years old; (B) the child resided continuously with the parent and stepparent for at least 5 years; (C) the parent is deceased or is disabled and is unable to care for the child; (D) the child wishes to have reasonable visitation with the stepparent; and (E) the stepparent was providing for the care, control, and welfare to the child prior to the initiation of the petition for visitation." 750 ILCS 5/607(b)(1.5) (West 1998).

The record indicates that
 Willard is alive, well, and fully capable of providing for Brittinie’s care.
  Although Lori raises the issue that Willard has purposefully interfered with her relationship with Brittinie and has ulterior motives in doing so, we 
must presume that Willard is acting in Brittinie’s best interests. See 
Troxel v. Granville
, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000).
  Additionally, 
Brittinie does not want to be forced to see Lori and was never consulted about this before the agreed order was entered.  Based on these factors, it is clear that the requirements of section
s 607(b)(1.5)(C) and (D) have not been met.
  
 

It is a long-standing policy in Illinois that natural
 parents have an inherent, paramount right to the care, custody, and control of their children.  See 
In re Marriage of Gustafson
, 181 Ill. App. 3d 472, 536 N.E.2d 1359 (1989).  We believe section 607(b)(1.5) was designed with that policy in mind in that stepparents are provided visitation rights only when natural parents are incapable of caring for the child and the child wishes to have 
visitation with the stepparent.  By doing so, section 607(b)(1.5) ensures that children maintain a healthy and close relationship with their natural parents.  

In compliance with section 607(b)(1.5), we determine that Brittinie should be consulted about visitation with her former stepmother, and she cannot be forced to engage in stepparent visitation against her will when she has two natural parents with whom she enjoys a wholesome relationship.  
See 
Community Consolidated School District No. 54 v. Illinois State Board of Education
, 216 Ill. App. 3d 90, 576 N.E.2d 250 (1991) (determining that where statutory authority exists, a court may only enforce the statute to the terms of its specific language).

Based on the foregoing reasons,
 
the 
provision in the marital settlement agreement regarding stepparent visitation is hereby stricken
 and the judgment of the circuit court of Will County 
is accordingly reversed.

Reversed.

HOLDRIDGE, and SLATER, JJ., concur.