DUSANKA MILENKOVIC *et al.*, Petitioners-Appellees, *v.* MILAN MILENKOVIC, Respondent-Appellant.

First District (5th Division)    No. 80-60

Opinion filed January 30, 1981.

Michael J. McArdle, of Chicago, for appellant.

Katz, Karacic & Helmin, and Alan J. Drucker, both of Chicago (Thomas J. Karacic, Kenneth A. Helmin, and T. Gregory Mieczynski, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal arises out of a marriage dissolution action brought by respondent's wife, who was allegedly murdered by respondent during the pendency of the action. Following the wife's death the circuit court granted a neighbor's petition for temporary custody of the two minor children, Dusanka and Radomir, and ordered the transfer of respondent's property interest to a trustee for the benefit and support of the children. The trial court denied respondent's motion to vacate all orders entered after the wife's death. On appeal, he contends that (1) because a dissolution action abates upon the death of a party, the trial court lost jurisdiction over the entire action and thus its subsequent orders are void;

(2) he was deprived of property without the due process of guarantees of notice and the opportunity to be heard. We affirm in part and reverse in part. The pertinent facts follow.

*Proceedings Prior to Radosava Milenkovic's Death*

On November 3, 1978, Mrs. Milenkovic (petitioner) filed an action for dissolution of marriage pursuant to the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). At the same time, she obtained a temporary restraining order against respondent on the grounds that he had threatened to injure or kill her. On November 5, 1978, respondent was personally served with summons and with notice of the petition for preliminary injunction. The circuit court granted Mrs. Milenkovic's petition on November 9, 1978, enjoining respondent from interfering with petitioner and from damaging or disposing of the marital home and its furnishings. Petitioner's request for sole possession of the marital home and other relief was continued to December 1, 1978.

On November 27, 1978, respondent filed his answer and appearance, through his attorneys. At the December 1 hearing on the petition for temporary relief, the court granted petitioner's request to appoint an attorney to represent the interests of the parties' minor children.

On April 10, 1979, after giving emergency notice to the attorneys of respondent and of the children, petitioner filed an emergency petition for a rule to show cause against respondent for violating the injunction by allegedly attempting to kill her. Further, she requested exclusive possession of the marital home. During an in-chambers hearing on the following day, the parties' children testified as to certain violent acts of respondent that they had witnessed. The children stated they had seen their father strike their mother, attempt to stab her, and point a gun at her. The court found respondent to be in wilful contempt and ordered the sheriff to arrest respondent and bring him before the court.

On April 12, 1979, both parties and their attorneys were present at a hearing on the emergency petition. Respondent's counsel was allowed to withdraw his appearance on the basis that his client had lied to him on all material matters.[1] After hearing the parties' testimony, the court awarded petitioner custody of the children and exclusive possession of the marital residence.

---

[1] Shortly thereafter, respondent obtained services of another law firm. The new attorneys filed an appearance on April 18, 1979. In September of 1979 respondent replaced this law firm with yet another attorney, who was attorney of record during the custody proceedings that took place following petitioner's death. Finally, respondent retained as additional counsel his current attorney, who filed the November 26 motion to vacate and who brought this appeal.

In August of 1979 the parties agreed to give respondent visitation rights and the court entered an order to that effect. In September 1979, respondent again allegedly threatened petitioner, who filed another rule to show cause. Her petition alleged that respondent again threatened bodily harm to her and the parties' daughter; that subsequent to the April 12 order awarding petitioner custody and exclusive possession of the marital home respondent had harassed and threatened petitioner's and the children's safety; that respondent had also violated the terms of the visitation order. The court continued the hearing on this petition until September 18, but ordered respondent to immediately desist from communicating with or approaching petitioner and the children pending the full hearing.

On September 12, 1979, before the hearing could be held, petitioner was shot to death. Respondent was charged with her homicide and incarcerated.

*Proceedings Subsequent to Radosava Milenkovic's Death*

On September 13, 1979, petitioner's friend and neighbor, Veronica Aglikin, filed a petition for custody of the two minor children pursuant to section 601(b)(2)[2] and other sections of the Act. She had taken the children into her home after the death of their mother. Mrs. Aglikin's attorney, who had previously represented petitioner, informed the court that his firm had received a letter from respondent's attorney authorizing appropriate arrangements for petitioner's funeral. This letter, received into evidence, also stated that respondent desired that his children continue to reside with the neighbor they had stayed with during the previous night until other arrangements could be made. The court found that an emergency existed and waived formal notice of this September 13 proceeding. The court also noted that respondent had received actual notice. Counsel for the children was present. After hearing Mrs. Aglikin's testimony and that of one of the children, the court awarded temporary custody to Mrs. Aglikin and continued the matter to October 10, 1979.

On October 1, after serving notice on respondent's attorney and on the children's representative, Alan Drucker, Mrs. Aglikin filed a petition for emergency temporary relief. On that day, neither respondent's attorney nor Drucker was present, although Drucker had informed Mrs. Aglikin's attorney that he had no objection to the petition. Pursuant to the petition, the court then awarded certain sums to Mrs. Aglikin for the expenses she incurred in caring for the children. The court further ordered that $60 a week from respondent's income be paid to Mrs. Aglikin for the children's support. Remaining matters were continued to October

---

[2] This section has been renumbered 601(d)(2) in the 1979 version of the Illinois Revised Statutes.

10, 1979. On that day the cause was again continued to October 17, 1979, without further notice.

On October 17, 1979, two additional petitions and a motion were filed. Notice of these matters was served on respondent's attorney on October 15. One petition requested that proceeds from a life insurance policy on plaintiff be assigned so that funeral expenses could be paid. The other petition, filed by Drucker on behalf of the children, sought the establishment of a trust fund for the benefit of the minor children because defendant had refused to pay support as ordered. The marital residence was to be the trust corpus. Also, Mrs. Aglikin filed a motion requesting the court to endorse certain checks made payable to respondent because he had refused to comply with the court's October 1 order to endorse the checks for support of his children. The court continued these matters to October 22, 1979, without further notice. During the October 22 hearing, the court granted Drucker's petition to place the marital residence in trust and to permit it to be sold, the proceeds to be held for the benefit of the children. The court named the Cosmopolitan National Bank of Chicago as trustee. Further, the court ordered that respondent be given 14 days in which to execute the necessary documents to transfer the property to the bank as trustee. If respondent failed to comply with this order, the court provided that a judge of the land title division of the circuit court would execute the deeds. Finally, the October 22[3] order continued the petition involving the life insurance proceeds and all remaining matters to November 7, 1979, without further notice and provided that there was no just reason to delay the enforcement of or appeal from the order.

On November 2 the bank served respondent's attorney with notice of its motion to have the appraisal of the marital home approved and to list the house with a realty company. On November 7, this motion was considered along with the other matters at the status report. Drucker informed the court that someone from the criminal division of the court informed him that respondent might be obtaining a new attorney and that this attorney requested a continuance of the pending matters. The court approved the bank's appraisal and continued all other matters until November 13, 1979, without further notice.

On November 13, in response to the bank's November 7 motion, the court approved the trustee bank's entering into the listing agreement with the realty and investment company. The court also ordered that an associate judge execute the necessary documents because of respondent's refusal to do so. All other matters were continued to December 20, 1979, without further notice.

On November 26, 1979, one of respondent's attorneys filed a motion to vacate all orders and to dismiss the entire lawsuit on the grounds that

---

[3] This order was entered October 26, 1979, but made retroactive to October 22, the date of the hearing on the matter.

the trial court lost jurisdiction over the subject matter of the suit following the death of petitioner. The motion also alleged that respondent had relatives and friends capable of caring for his children and property and that the two-flat marital residence was capable of producing rental income to provide for the children's support.

During the December 27 hearing on respondent's motion to vacate, respondent's counsel argued that no attorney had appeared on respondent's behalf at the hearings during which custody of the children was awarded to Mrs. Aglikin and respondent's property was put in trust for the children. Counsel further argued that respondent did not speak English and was unable to appear in court because he was confined in jail during the proceedings; consequently, his property was taken without due process of law.

After the hearing, the court denied respondent's motion to vacate and dismiss, finding that section 602(b)(2) of the Act authorized the court's exercise of jurisdiction over the custody of the children, even though the dissolution action abated upon petitioner's death. The court also found that it had the power to put respondent's property in trust for the minor children's benefit, under section 503(d) of the Act, and that respondent had notice of the proceedings.

OPINION

The initial question to be answered is whether the circuit court had authority, following the death of one of the parties to the pending dissolution action, to enter orders involving the custody and support of the parties' minor children. We hold that it did.

I

■■ Respondent's premise is simple: In Illinois, pending marriage dissolution actions abate upon the death of one of the parties (*Bushnell v. Cooper* (1919), 289 Ill. 260, 124 N.E. 521; *Howard v. Howard* (1977), 49 Ill. App. 3d 441, 364 N.E.2d 464); therefore, the trial court's jurisdiction over this matter terminated upon the death of respondent's wife and all orders entered thereafter are void.

■■■ We agree with the first part of respondent's statement as a general principle of Illinois law. We do not question the soundness of those cases, decided under the former divorce act, which hold that a divorce action abates upon the death of one of the parties. The purpose of divorce is to dissolve the marital status, which is a personal relationship between the two parties. As our supreme court has cogently noted, "death settle[s] the question of separation beyond all controversy," and deprives the court of jurisdiction over the matter. (*Bushnell*, 289 Ill. 260, 264, 124 N.E.2d 521, 522.) Later cases following this rationale have held that the court is not

empowered to enforce property settlement agreements incorporated into divorce decrees if they are not entered before one party's death (*In re Schriver* (1937), 289 Ill. App. 581, 7 N.E.2d 611; see *Dietz v. Speybroeck* (1922), 225 Ill. App. 133), and that temporary alimony orders abate upon the death of a party to a pending divorce because they are "incidental to the main action for divorce." *Howard v. Howard* (1977), 49 Ill. App. 3d 441, 444, 364 N.E.2d 464, 465.

The above cases, though correct applications of Illinois law, are inapposite to the pending case because none of the cases addresses the effect of a dissolution abatement upon child custody proceedings initiated pursuant to the Illinois Marriage and Dissolution of Marriage Act.[4] We believe that, although the court presumably lost jurisdiction over the dissolution action itself, the child custody provisions of the Act amply authorized the circuit court's jurisdiction, following petitioner's death, to enter the orders challenged here.[5]

There are two ways to view the court's jurisdiction over the custody of the children: (1) as a continuation of the original proceeding, or (2) as a new proceeding under section 601(b)(2) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 601(b)(2)), which provides:

> "(b)  a child custody proceeding is commenced in the court:
>
> ⁕ ⁕ ⁕
>
> (2)  by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents."

Respondent objects to the second basis of jurisdiction on the grounds that he did not receive summons for the new action, or other adequate notice and opportunity to be heard. We will discuss the due process issues more fully in the second part of this opinion. We note, however, that the neighbor who petitioned for the children's custody comes directly within the language of section 601(b)(2) because the children were not in the physical custody of either parent when the petition was filed. "Physical

---

[4] It does not appear that any cases decided under prior Illinois law squarely address this question of survival of child custody jurisdiction following divorce abatement in similar circumstances. But see *Ollman v. Ollman* (1947), 396 Ill. 176, 71 N.E.2d 50 (court could not determine property rights, alimony, or child custody absent a valid divorce decree); see also *Kramp v. Kramp* (1954), 2 Ill. App. 2d 17, 117 N.E.2d 859 (court retained post-decree jurisdiction over custody of children following death of father, but lost jurisdiction regarding support payments).

[5] Section 601 sets forth the jurisdictional standards for child custody proceedings. Subsection (a) incorporates the jurisdictional provisions of the Uniform Child Custody Jurisdiction Act as adopted in Ill. Rev. Stat. 1979, ch. 40, par. 2101 *et seq*. See Ill. Rev. Stat. 1979, ch. 40, par. 2104; Ill. Ann. Stat., ch. 40, par. 601, Historical and Practice Notes, at 3—9 (Smith-Hurd 1980).

custody" is defined in the Act as "actual possession and control of a child." (Ill. Rev. Stat. 1979, ch. 40, par. 2103.08.) We believe that where the mother is dead and the father is in jail it is obvious that neither parent has direct control over the children's care.

The circuit court found it unnecessary to view Mrs. Aglikin's child custody petition under section 601(b)(2) as a new proceeding. Instead, the court treated her as an intervenor in the original action.[6] Thus, the court believed it had continuing jurisdiction over the children following their mother's death. We agree.

In support of this view, there are several relevant provisions of the Act which indicate that child custody proceedings may be distinct from—rather than incident to—dissolution actions. Under section 601 (Ill. Rev. Stat. 1977, ch. 40, par. 601(b)(1)(i), (ii)), a parent may commence a child custody proceeding either by filing a marriage dissolution petition or by filing a petition for custody, regardless of the marital status.[7] Moreover, a temporary custody order may survive the dismissal of the dissolution proceeding and the court may enter a custody judgment if "the court finds, after a hearing, that the circumstances of the parents and the best interest of the child" so require. (Ill. Rev. Stat. 1979, ch. 40, par. 603(b).) Additionally, as we have discussed, section 601(b)(2) permits a nonparent to initiate a custody action when neither parent has physical custody of the child.

■■ The inference that may be drawn from these provisions is that child custody proceedings are not jurisdictionally precluded by the absence or termination of dissolution proceedings. Hence, the general principle that death of a party abates the divorce action should not be too hastily applied to child custody matters.

■■■ Moreover, it is important to recognize that it has long been the law in Illinois that the death of a custodial parent after a final divorce judgment has been entered does not automatically revert custody to the surviving parent. (*Jarrett v. Jarrett* (1953), 415 Ill. 126, 112 N.E.2d 477), even if that parent would be considered to be a fit parent. (See *Mackie v. Mackie* (1967), 88 Ill. App. 2d 61, 232 N.E.2d 184.) Thus, when a divorced custodial parent dies the court has the power to determine further custody transfers of a child even though the legal custody of the child is not in anyone immediately following the death of the custodian. (*Mackie*, 88 Ill. App. 2d 61, 68, 232 N.E.2d 184, 188.) This reasoning is consonant with the firmly entrenched concept that custody determinations must be predicated upon the best interest of the child. Ill. Rev. Stat. 1979, ch. 40, par.

---

[6] Section 601(c) allows intervention of "interested parties" in custody proceedings.

[7] Thus, parents who do not seek to affect their marital status may sue for custody under the Act rather than bring a habeas corpus action, the remedy formerly used. See Ill. Ann. Stat., ch. 40, par. 601, Historical and Practice Notes, at 8 (Smith-Hurd 1980).

602; *Sommer v. Borovic* (1977), 69 Ill. 2d 220, 370 N.E.2d 1028; *In re Wheat* (1979), 68 Ill. App. 3d 471, 386 N.E.2d 278.

■■ We conclude from our analysis of relevant Illinois law that we must reject respondent's contention that the custody determination in the pending case should be voided merely because it was never incorporated into a final dissolution judgment. That the initial order awarding the children's custody to their mother was "temporary relief" does not affect the result, because it is clear that the children's interests and needs were of concern to the court from the beginning, regardless of the status of the marriage. This is indicated in part by the court's order of October 1, 1978, which approved the appointment of counsel to represent the children's interests. Certainly the children's needs did not abate upon the death of their mother; her death could only intensify them.

■■ Respondent's apparent response to the above considerations is that the legislature rather than the court must provide for the survival of a custody proceeding in cases such as the one before us. We believe that the custody provisions of the Act indicate that the legislature has done just that. As additional authority for the circuit court's exercise of jurisdiction over the children's custody we find persuasive the doctrine of *parens patriae*. This common law concept has traditionally empowered the courts, in extreme circumstances, to guard the welfare of neglected minors, incompetents, and others who suffer certain legal disabilities. The *parens patriae* doctrine is expressly incorporated into the jurisdictional section 601(a) of the Act.[8] Jurisdiction under this doctrine is premised on the existence of an emergency and is analogous to the jurisdiction of the juvenile courts. We believe the circumstances of this case justified the trial court's exercise of *parens patriae* jurisdiction even absent any other jurisdictional basis in the Act. The parties' two minor children, aged 11 and 14 at the time, lost their mother through the violent shooting that their father is alleged to have committed.[9] He is presently in jail, without the immediate prospect of release. When the mother filed for marriage dissolution and obtained injunctive orders against her husband, she was awarded custody on grounds that are of record.

---

[8] See Ill. Rev. Stat. 1979, ch. 40, pars. 601(a), 2104(a)(3); Ill. Ann. Stat., ch. 40, par. 601, Historical and Practice Notes, at 6—7 (Smith-Hurd 1980). The court's emergency *parens patriae* power under subsection 4(a)(3) (Ill. Rev. Stat. 1979, ch. 40, par. 2104(a)(3)) is considered extraordinary and is not intended as the basis of jurisdiction for general custody disputes between parents and others. (Ill. Ann. Stat., ch. 40, par. 601, Historical and Practice Notes, at 7 (Smith-Hurd 1980).) It should be noted, however, that jurisdiction under this subsection apparently coexists with that conferred by the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, pars. 702—4 (neglected minor); 702—5 (dependent minor)). Child custody proceedings can also be initiated under the Habeas Corpus Act (Ill. Rev. Stat. 1979, ch. 65, par. 1 *et seq.*) and the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 11—5). Ill. Ann. Stat., ch. 40, par. 601, Historical and Practice Notes, at 8 (Smith-Hurd 1980).

[9] While this appeal was pending respondent was convicted of voluntary manslaughter and sentenced to seven years' imprisonment.

Respondent was twice made subject to rules to show cause for violating the court's injunction, and for violating the visitation order. The children told the trial judge that they had seen their father strike and threaten their mother, and the record indicates that there was at least a possibility that the daughter's physical safety had also been threatened by respondent. On these facts, to hold that the trial court lost jurisdiction over the children's welfare following their mother's death would ignore the clear import of the Act's custody provisions and decimate the court's historical powers embodied in the *parens patriae* concept. This we will not do. The trial court's continued jurisdiction over the children's welfare following their mother's death rests on a firm foundation.

## II

Respondent next contends he was denied due process of law because he was not given adequate notice of the proceedings following petitioner's death on September 12, 1979, and because his attorney's absence from these proceedings effectively deprived him of his opportunity to be heard. We agree that respondent's two-flat residence should not have been placed in trust to be sold for the children's support before respondent was allowed to offer evidence of his financial ability to support the children by other means. We therefore reverse the trial court's denial of respondent's request for a new hearing on that issue. In remanding, however, we do not disturb the court's custody determination that placed the Milenkovic children in Mrs. Aglikin's care.

In analyzing the due process issue we first note that Mrs. Aglikin's custody petition, filed pursuant to section 601(b)(2) of the Act, was not a "new" proceeding that would require additional service of summons upon respondent. As we have held, the court properly treated Mrs. Aglikin as an intervenor in the original action.

The facts of this opinion set forth the chronology of the challenged proceedings, which we need not repeat in detail. For clarity, however, we will review the occurrences of the September 13, 1979, proceedings.

On September 13, the day after petitioner's death, Mrs. Aglikin filed her petition for custody of the Milenkovic children, which alleged that the children were staying in her home; that they had expressed the desire to remain there; and that to preserve the status quo a temporary order granting custody to Mrs. Aglikin was necessary to prevent irreparable harm to the children. Further, the petition stated that respondent's attorneys had been notified by telephone of the petition. At the hearing on this petition, Aglikin's attorney (who had previously represented petitioner) verified that he had given notice to respondent's newly retained attorney, who had appeared in court briefly but then left to attend another trial. Before leaving, respondent's attorney submitted a letter in which he stated that he had been retained by respondent. The letter

contained his client's authorization to make funeral arrangements and to permit the children to remain with their neighbor temporarily. During this September 13 hearing, he was also granted leave to file his appearance and respondent's previous attorneys were given leave to withdraw. The trial court found that an emergency existed and waived formal notice.

■■ In view of the above, we find that respondent was on actual notice of the September 13 proceedings and that the court did not err or abuse its discretion in awarding temporary custody to Mrs. Aglikin. Respondent's attorney had received telephone notice and had briefly appeared in court on the day the petition was heard, to enter his appearance and to present the letter which represented respondent's acquiescence to letting the children remain with their neighbor (Mrs. Aglikin). Without doubt, notice of the September 13 custody proceedings was adequate under these circumstances. That being so, the trial court had authority to hear Mrs. Aglikin's petition for custody of the Milenkovic children.

■■ In awarding temporary custody to her, moreover, the court did not abuse its discretion. Significantly, respondent has never alleged that Mrs. Aglikin is unfit to care for the children. There is nothing in the record to support any inference that she should not retain custody; the evidence is to the contrary. Nor can we surmise what alternative arrangements respondent might prefer.[10] As we have recognized, however, Illinois law establishes beyond argument that it is the best interest of the child standard that the trial court must adhere to in determining custody; even parental preferences must yield. See Ill. Rev. Stat. 1979, ch. 40, par. 602; *Sommer v. Borovic* (1977), 69 Ill. 2d 220, 370 N.E.2d 1028; *Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 713.

Having found no error with respect to the custody order we must next address respondent's claim that he was deprived of property without due process of law. The essence of due process is procedural fairness, as embodied in the elements of notice and opportunity to be heard. (*E.g., People v. Niesman* (1934), 356 Ill. 322, 190 N.E. 668; *Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 373 N.E.2d 1007.) As long as these elements are satisfied, a party is not denied due process, even if he fails to avail himself of his opportunity to be heard. *Lescher v. Barker; Rhodes v. Anderson* (1976), 39 Ill. App. 3d 208, 349 N.E.2d 113.

■■ As reflected in the facts of this opinion, the record indicates that respondent's attorney was personally served with notice before each motion or petition which preceded the court's orders affecting respondent's property rights. Theoretically, at least, respondent was given the *opportunity* to present evidence through his attorney. Therefore, it is

---

[10] Respondent's November 26, 1979, motion to vacate alleged that he had close friends and relatives "willing to care for the children," an assertion explicitly refuted in Mrs. Aglikin's response to the motion.

possible to state that the minimum due process requirements were technically met in this case. Nevertheless, we do not believe that basic procedural fairness is achieved where, as here, an incarcerated party has no actual notice and no reasonable chance to present evidence before his property is ordered to be sold. Except for the brief appearance in court on September 13, 1979, to convey his client's wishes regarding the children's custody and the funeral arrangements, respondent's attorney completely failed to respond to all subsequent notices he received. He did not attend the hearings on the children's support matters. He did not object to any of the proceedings on behalf of his client, nor did he request any continuances. There is nothing in the record to explain this. Despite the absence of respondent or his attorney, the court made various orders affecting respondent's property, in a period of four weeks after Mrs. Milenkovic's death. Respondent claims that he had no knowledge of these occurrences that effectively deprived him of his realty. He also alleges that his two-flat residence is capable of generating sufficient rental income to pay for his children's support and that the court should have inquired into his financial capabilities before permitting the sale of the residence.

■■ We believe that respondent should be allowed to present his evidence on this issue. Although we are aware that service on the attorney is generally imputed to the client (*People ex rel. Rogers v. Elrod* (1975), 35 Ill. App. 3d 26, 28, 340 N.E.2d 598, 600 (it is "well-settled" that a client is deemed to have received notice of matters in which his attorney receives notice, regardless of whether the attorney actually informs the client); see Ill. Rev. Stat. 1979, ch. 110A, par. 11), we believe a rigid application of such a rule without regard to the facts of the case would be inappropriate. In effect, respondent's opportunity to be heard was nonexistent; he was unaware of the petitions and motions served on his attorney, who did not respond to them in any way. Thus, we believe that the court abused its discretion, in these circumstances, by permitting the marital residence as the trust corpus to be sold without first hearing from respondent or his attorney.

It is important to recognize that the trial court has the power to make provisions for the children's support. We are not holding that the court could not set up a trust fund for the children under section 503(d) of the Act.[11] Indeed, respondent does not assert that he has no *obligation*, as a father, to provide for his minor children. Nor does he challenge the amount

---

[11] This section provides:
"The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties."

of the payments that the court ordered him to pay for his children's support. Instead he argues that the court exceeded its discretion by prematurely permitting the sale of the real property that could be used to support the children through its potential to generate rental income. We agree that the court's summary disposition of the property in this case was an abuse of discretion and that respondent must be given an opportunity to present his defense before the property can be sold.

For the foregoing reasons, we affirm the trial court's continued jurisdiction over the custody of the Milenkovic children following the death of their mother. However, we reverse the trial court's denial of respondent's request for an evidentiary hearing on the matter of his financial capabilities to support the children, and remand the cause for a hearing limited to that issue. Respondent or his attorney must be present at that time.

Affirmed in part, reversed in part, and remanded with directions.

LORENZ and MEJDA, JJ., concur.