*In re* A.W.J., a Minor (Jean K. Tawrel, Petitioner-Appellee, v. Linda Patterson *et al.*, Respondents-Appellants (Richard J., Respondent)).

Second District    No. 2—99—1165

Opinion filed September 21, 2000.

Neal W. Cerne, of Law Office of Neal W. Cerne, P.C., of Wheaton, for appellant.

Willaim R. Axley, of Law Offices of William R. Axley, of Addison, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The respondents, Linda Patterson and Mitch Patterson, appeal from the September 23, 1999, order of the circuit court of Du Page

County awarding sole custody of A.W.J. to the petitioner, Jean Tawrel. On appeal, the Pattersons argue that (1) Tawrel lacked standing to seek custody of A.W.J.; (2) the trial court erred in failing to treat the instant proceeding as a request to modify custody; and (3) the trial court's ruling awarding custody to Tawrel was against the manifest weight of the evidence. The latter two arguments are disposed of in the nonpublished portion of this opinion.

The facts relevant to the disposition of this appeal are as follows. A.W.J. was born on August 13, 1995, to Aileen Tawrel and Richard J. Aileen Tawrel and Richard J. were never married, although they lived together with A.W.J. until July 21, 1996. On that date, Richard J. was alleged to have murdered Aileen Tawrel. Richard J. was subsequently convicted of first-degree murder and sentenced to 40 years' imprisonment. Jean Tawrel is A.W.J.'s maternal grandmother, and Linda Patterson is A.W.J.'s paternal grandmother. Linda Patterson is presently married to Mitch Patterson. Mitch Patterson is Linda Patterson's second husband and is not a blood relative of A.W.J.

Immediately following Aileen Tawrel's death, Richard J. took A.W.J. to the home of his grandmother, Ruth Tovella. On July 23, 1996, Jean Tawrel went to Tovella's home and took A.W.J. On July 30, 1996, Tawrel filed a petition for guardianship of A.W.J. pursuant to the provisions of the Probate Act of 1975 (the Probate Act) (755 ILCS 5/11—5 (West 1996)).

On August 9, 1996, while incarcerated at the Du Page County jail, Richard J. executed a document that appointed his mother, Linda Patterson, as short-term guardian of A.W.J. for a period of 60 days pursuant to section 11—5.4 of the Probate Act (755 ILCS 5/11—5.4 (West 1996)).

On August 16, 1996, the trial court entered an order dismissing Tawrel's petition for guardianship for lack of subject matter jurisdiction. See 755 ILCS 5/11—5(b) (West 1996). Although there is no transcript from this proceeding, it appears that the trial court concluded that Jean Tawrel lacked standing under the Probate Act to seek guardianship because Richard J.'s parental rights to A.W.J. had not been terminated and because he had already appointed Linda Patterson to act as guardian. Following the trial court's ruling, A.W.J. was placed in the physical custody of Linda and Mitch Patterson.

A.W.J. continued to reside with Linda and Mitch Patterson in the months that followed. On October 8, 1996, Richard J. executed a second short-term guardian appointment, again appointing Linda Patterson as A.W.J.'s guardian for the next 60 days.

On November 19, 1996, Tawrel filed a petition seeking custody of A.W.J. pursuant to section 601(b) of the Illinois Marriage and Dissolu-

tion of Marriage Act (the Act) (750 ILCS 5/601(b) (West 1996)). Linda Patterson, Mitch Patterson, and Richard J. were named as respondents in the proceeding. The petition alleged that it was in A.W.J.'s best interests to be placed in both the temporary and permanent physical possession and custody of Tawrel. The petition also requested that Tawrel be awarded immediate unrestricted visitation with A.W.J. and that the trial court enter a visitation schedule. The petition also sought the appointment of a guardian *ad litem* (GAL) to represent A.W.J.'s interests in the proceedings.

In addition to her request for custody of A.W.J., Tawrel's petition requested additional relief under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1—1 *et seq.* (West 1996)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1996)). Specifically, Tawrel requested that (1) A.W.J. be adjudicated neglected and made a ward of the court; (2) that she be appointed guardian of A.W.J.; (3) that Richard J.'s parental rights to A.W.J. be terminated; and (4) that she be permitted to adopt A.W.J.

Following the filing of the petition, the trial court ordered that Tawrel be permitted to have visitation with A.W.J. three times a week. The trial court ordered that visitation would occur on Tuesdays and Thursdays from 4:30 p.m to 8:30 p.m. and on Saturdays from 10 a.m. to 5:30 p.m.

On December 16, 1996, the Pattersons filed various motions seeking to dismiss the petition. The Pattersons argued that Tawrel was without standing to bring a petition for custody because section 601(b) of the Act permits a nonparent to initiate a custody proceeding only if the child is "not in the physical custody of one of his parents" (750 ILCS 5/601(b)(2) (West 1996)). The Pattersons argued that, although incarcerated, Richard J. still retained legal custody of A.W.J. and had placed him in the physical custody and guardianship of Linda Patterson. The Pattersons argued that, without physical custody of the child, Tawrel lacked standing to seek custody.

The Pattersons also challenged the sufficiency of the petition's allegations seeking the termination of Richard J.'s parental rights to A.W.J., the appointment of Tawrel as guardian, and Tawrel's request to adopt A.W.J. The Pattersons argued that the petition failed to allege facts demonstrating that A.W.J. had been abused or neglected by Richard J. or that he was otherwise unfit to be a parent. The Pattersons also argued that the petition failed to allege facts demonstrating that A.W.J.'s present home environment was injurious to his welfare.

In response, Tawrel argued that section 601(b) of the Act did not require that she have physical custody of A.W.J. in order to have standing to file a petition for custody. Rather, she argued that all the statute

requires for a nonparent to have standing is that the minor child not be in the physical custody of one of his parents. Tawrel argued that, by virtue of his incarceration, Richard J. did not have physical or legal custody of A.W.J. and was unable to fulfill his role as A.W.J.'s custodian. Additionally, Jean Tawrel argued that her allegations under the Juvenile Court Act and the Adoption Act were legally sufficient to withstand dismissal.

On January 8, 1997, following argument of counsel, the trial court denied the Pattersons' motion to dismiss that portion of the petition seeking custody of A.W.J. In so ruling, the trial court found that Tawrel had standing to initiate a custody proceeding pursuant to section 601(b) of the Act. The trial court also denied the Pattersons' motion to dismiss that portion of the petition seeking relief under the Juvenile Court Act and the Adoption Act. However, as to these latter allegations, the trial court indicated that it would stay the proceedings "to wait for the State's Attorney to decide whether or not they will proceed on the Juvenile Court case." The trial court also appointed Brigid Duffield to act as GAL for A.W.J. during the entirety of the proceedings.

On March 19, 1997, the Pattersons filed a counterpetition for custody pursuant to section 601(b) of the Act. In their petition, the Pattersons alleged that A.W.J. was not in the physical possession of his natural father and that the natural father had voluntarily relinquished custody to Linda and Mitch Patterson. The petition alleged that A.W.J. had been in the Pattersons' custody since July 1996 and that it was in the best interests of A.W.J. to remain with them.

On June 26, 1998, on Tawrel's motion, the trial court modified the visitation schedule to allow A.W.J. to have overnight visits with Tawrel once a week and every other weekend.

On April 14, 1999, Tawrel filed a petition to terminate any visitation between Richard J. and A.W.J. In the petition, Tawrel alleged that Linda and Mitch Patterson had been taking A.W.J. to the state penitentiary for weekly visits with Richard J. Tawrel further alleged that both the court-appointed psychologist, Dr. Demetri Dres, and the GAL, Brigid Duffield, had recommended that A.W.J. not be taken to prison to visit Richard J. On April 15, 1999, the trial court granted the petition and ordered that all visitation between A.W.J. and Richard J. be temporarily suspended until further order of court.

On May 20, 1999, Richard J. filed a petition seeking visitation with A.W.J. In the petition, Richard J. alleged that he had been a primary caretaker of the child prior to his incarceration. He alleged that, since the time of his incarceration, he had enjoyed visitation with A.W.J. at least once a week until the trial court's order temporarily suspending

those visits. Richard J. asserted that he was a fit and proper person to have visitation and that visitation was in A.W.J.'s best interests.

On May 24, 1999, the trial court held a trial on that portion of Tawrel's petition seeking custody of A.W.J. pursuant to section 601(b) of the Act, as well as the Pattersons' counterpetition for custody, and Richard J.'s petition for visitation.

On October 1, 1999, following the trial, the trial court entered an order granting sole custody of A.W.J. to Tawrel. In making its determination, the trial court primarily relied upon the findings of the court-appointed psychologist, Dr. Dres, and the recommendations of the GAL, Brigid Duffield. The trial court also found the testimony of Jean Tawrel's Supreme Court Rule 215 (166 Ill. 2d R. 215) expert, Dr. Kadi Sprengle, to be clear and convincing. The trial court did not accord significant weight to the testimony of the Pattersons' Rule 215 expert, Dr. Roger Hatcher, finding that he was substantially impeached on cross-examination and by the testimony of the other experts.

In entering its findings, the trial court specifically noted that each of the parties was in good mental health and reasonably good physical health to care for A.W.J. The trial court also found that A.W.J. was equally well adjusted to both the Tawrel and the Patterson residences and the neighborhoods in which they lived. The court found no evidence of violence in either household and concluded that it was not fair or appropriate to assign blame to Linda and Mitch Patterson for the death of Aileen.

The trial court awarded visitation to the Pattersons and to A.W.J.'s paternal grandfather, Richard J., Sr. The trial court found that it was not in the best interests of A.W.J. to have contact with his father and ordered that all visitation and telephone contact cease. The trial court reserved the issues of the termination of Richard J.'s parental rights and Tawrel's petition for adoption for a later date. On October 14, 1999, the trial court entered an order pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding that its ruling on the custody and visitation issues was final and that there was no just reason for delaying enforcement or appeal. The Pattersons subsequently filed a timely notice of appeal.

The Pattersons' first argument on appeal is that the trial court erred in denying their motion to dismiss that portion of Tawrel's petition seeking custody pursuant to section 601(b) of the Act. The Pattersons argue that a nonparent lacks standing to bring a petition for custody under section 601(b) when the natural parent's rights have not been terminated and the natural parent has designated another individual to act as guardian of the child. The Pattersons argue that, despite his incarceration, Richard J. retained both legal and physical

custody of A.W.J. for purposes of section 601(b) and that Tawrel therefore was without standing to petition for custody.

■ The Pattersons' motion to dismiss the petition was brought pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1996)). Such a motion may be granted when the claim asserted is barred by some affirmative matter defeating the claim. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). The assertion that a party lacks standing to bring an action is properly raised under section 2—619(a)(9). *Glisson*, 188 Ill. 2d at 220. Whether a party has standing to pursue a custody petition under section 601(b) of the Act is a question of law and is reviewed *de novo. In re Marriage of Siegel*, 271 Ill. App. 3d 540, 543-44 (1995). Accordingly, in reviewing the trial court's ruling on a motion to dismiss for lack of standing, we do not give the trial court's judgment deference. *Marriage of Siegel*, 271 Ill. App. 3d at 544.

■ Section 601(b)(2) of the Act allows a nonparent to petition for the custody of a child, but only if the child is not in the physical custody of one of his parents. 750 ILCS 5/601(b)(2) (West 1996). That statute provides, in relevant part:

"(b) A child custody proceeding is commenced in the court:

\* \* \*

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, but only if he is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 1996).

This statutory section creates a standing requirement that nonparents must satisfy in order to commence a custody action. *In re Custody of Peterson*, 112 Ill. 2d 48, 52-53 (1986). In order to do so, the nonparent must show that the natural parent has relinquished "physical custody" of the child within the meaning of the statute. *In re Marriage of Rudsell*, 291 Ill. App. 3d 626, 632 (1997).

The determination that a parent does not have physical custody of a child turns not on possession; rather, it requires a showing that the parent somehow has voluntarily and indefinitely relinquished custody of the child. *In re Petition of Kirchner*, 164 Ill. 2d 468, 491 (1995). However, not every voluntary turnover of a child will deprive the parent of physical custody. Rather, the court must consider such factors as (1) who was responsible for the care and welfare of the child prior to the initiation of custody proceedings; (2) the manner in which physical possession of a child was acquired; and (3) the nature and duration of the possession. *Marriage of Rudsell*, 291 Ill. App. 3d at 632.

Turning to the instant case, for Tawrel to establish standing, she was obligated to demonstrate that Richard J. had relinquished physi-

cal custody of A.W.J. As Richard J. was incarcerated at the time that the petition was filed, there is no dispute that he did not have physical possession of A.W.J. However, as noted above, the concept of "physical custody" for purposes of the statute does not turn on possession. The Pattersons argue that, although Richard J. was incarcerated, his parental rights had not been terminated and that he exercised those rights by appointing Linda Patterson to act as short-term guardian. The Pattersons argue that Richard J. still retains the ability to make decisions regarding the welfare of A.W.J. and that he has not "voluntarily and indefinitely" relinquished custody of the child. In response, Tawrel argues that Richard J.'s incarceration deprived him of physical custody of A.W.J. and rendered him unable to fulfill his role as A.W.J.'s custodian.

In *Milenkovic v. Milenkovic*, 93 Ill. App. 3d 204, 211-12 (1981), the court noted that a nonparent has standing to file a petition for custody under section 601(b) of the Act when the only living natural parent is incarcerated. In *Milenkovic*, as in the instant case, the natural father was alleged to have murdered the mother and was arrested and incarcerated. *Milenkovic*, 93 Ill. App. 3d at 206. Following the incident, a neighbor filed a petition and was awarded custody of the parents' two minor children pursuant to section 601(b)(2) of the Act. *Milenkovic*, 93 Ill. App. 3d at 208. In ruling that the trial court had jurisdiction over the petition, the reviewing court noted that the children were not in the physical custody of either parent when the petition was filed. *Milenkovic*, 93 Ill. App. 3d at 211. The court noted that "where the mother is dead and the father is in jail it is obvious that neither parent has direct control over the children's care." *Milenkovic*, 93 Ill. App. 3d at 212.

Under different circumstances, in *Naylor v. Kindred*, 250 Ill. App. 3d 997 (1993), the court also concluded that an incarcerated parent could not retain physical custody of his child. In that case, the natural father filed a petition for change of custody after the natural mother left the state with the parties' three children and was subsequently incarcerated after being convicted of federal welfare fraud. *Naylor*, 250 Ill. App. 3d at 1000. Following her incarceration, the natural mother signed a statement granting temporary guardianship of the children to her mother and her sister. *Naylor*, 250 Ill. App. 3d at 1000. After the trial court granted the father's petition to change custody, the natural mother appealed, arguing that an incarcerated custodial parent should remain the nominal custodian of the child and should be able to designate a temporary custodian. *Naylor*, 250 Ill. App. 3d at 1008.

The reviewing court rejected this argument, holding that it is

impossible for a parent to act as a child's custodian when incarcerated. *Naylor*, 250 Ill. App. 3d at 1009. The reviewing court explained:

"[A]n incarcerated parent, much like a deceased parent, is no longer able to care for, supervise, provide a home, prepare food, obtain medical treatment, or be involved in the daily life of the child. In short, an incarcerated parent cannot fulfill the role of a physical custodian of the child. Although incarceration may not absolutely prevent a parent from fulfilling the role of the child's legal custodian, it does impair this ability. The parent is not readily available to give advice or console the child, or to be an example. Further, the incarcerated parent is not readily available to consent to medical treatment and decide other issues generally reserved to legal custodians." *Naylor*, 250 Ill. App. 3d at 1009.

Lacking any Illinois authority stating that an incarcerated parent continues to hold custody of his or her children, the *Naylor* court held that an incarcerated parent, by virtue of his or her incarceration, does not have physical custody of his or her children. *Naylor*, 250 Ill. App. 3d at 1009, 1014. The court noted that the incarceration of the custodial parent is analogous to the death of the custodial parent, as in both instances the parent is no longer able to care for the child or perform other custodial duties. *Naylor*, 250 Ill. App. 3d at 1013.

■ We agree with the courts in *Milenkovic* and *Naylor* that it is not possible for a parent who is incarcerated to act as the physical custodian of his or her children. As noted in *Naylor*, an incarcerated parent cannot directly provide for the child's care or welfare or participate in the child's everyday life. Although the parent's relinquishment of physical custody because of his or her incarceration might not be voluntary, we believe that it is nonetheless a relinquishment of custody for purposes of section 601(b) of the Act. As a practical matter, the incarcerated parent cannot retain physical custody of his or her child, and the child must be placed with another custodian. In instances where one parent is incarcerated and the other parent has died, we believe that it is appropriate for a nonparent to seek custody under section 601(b) of the Act and for the trial court to consider whether placement with the nonparent is in the child's best interests. See *Milenkovic*, 93 Ill. App. 3d at 212.

As the Pattersons correctly note, incarceration does not necessarily terminate a parent's legal custody of his or her natural child. *Naylor*, 250 Ill. App. 3d at 1013. However, we disagree with the Pattersons' conclusion that Tawrel did not have standing to petition for custody under section 601(b) because Richard J. did not volutarily relinquish legal custody of A.W.J. The standing requirement contained in section 601(b) of the Act refers to "physical custody" rather than

"legal custody." Our supreme court has never interpreted the term "physical custody" for purposes of section 601(b) as being interchangeable with the term "legal custody." Rather, the supreme court has simply noted that, in certain situations, it is possible for a parent to retain "physical custody" of the child for purposes of section 601(b) without having actual physical possession. See *Peterson*, 112 Ill. 2d at 54 (noncustodial father did not relinquish physical custody of his child merely because child had resided with mother prior to her death).

Indeed, the term "legal custody" cannot be found in any statutory section within the custody provisions of the Act. Parents have legal custody of their children by virtue of their status as biological parents, and that status can only be relinquished through court order. See *In re Custody of Roberts*, 107 Ill. App. 3d 913, 918 (1982). While a parent's conduct may give a court reason to terminate legal custody, that conduct does not independently end the parent's rights. By its plain language, section 601(b) is to be used in those instances where custodial modification would be in the children's best interests, even though a court has not determined the parent or parents to be unfit persons. If this were not the purpose of section 601(b), then it would be merely duplicative of the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1996)) and the Juvenile Court Act (705 ILCS 405/1—1 *et seq.* (West 1996)).

We are aware of several Illinois cases requiring proof that the natural parent has relinquished "legal custody" in order for a nonparent to have standing under the Act. See *Marriage of Siegel*, 271 Ill. App. 3d at 542; *In re Marriage of Dile*, 248 Ill. App. 3d 683, 686 (1993). However, we believe these decisions have misinterpreted the supreme court's language in *Peterson* and are at odds with the plain language of the section 601(b). The majority of courts interpreting section 601(b) have not required a showing that the parent did not have legal custody in order for a nonparent to have standing. See *Marriage of Rudsell*, 291 Ill. App. 3d at 633; *In re Marriage of Brownfield*, 283 Ill. App. 3d 728, 732-36 (1996); *In re Marriage of Thompson*, 272 Ill. App. 3d 257, 261 (1995). We therefore decline to follow *Siegel* and *Dile* and instead hold that a nonparent must only show that the natural parent has relinquished physical custody in order to have standing under section 601(b). See *Milenkovic*, 93 Ill. App. 3d at 211-12.

We also reject the Pattersons' argument that Richard J.'s repeated appointment of Linda Patterson to act as short-term guardian pursuant to section 11—5.4 of the Probate Act (755 ILCS 5/11—5.4 (West 1996)) somehow deprived Tawrel of standing under section 601(b) of the Act. Section 11—5.4 of the Probate Act provides that a parent whose parental rights have not been terminated may, without court

approval, appoint a short-term guardian of his child for a period of 60 days. 755 ILCS 5/11—5.4 (West 1996). We agree with Tawrel that a parent lacking "physical custody" for purposes of section 601(b) of the Act cannot divest the trial court of its ability to hear a nonparent's petition for custody merely by executing repeated short-term guardianship appointments pursuant to the Probate Act. Such appointments do not change the fact that the parent lacks physical custody of the minor child. Here, although Richard J. executed short-term appointments in favor of Linda Patterson, he still lacked physical custody of A.W.J. because of his incarceration. See *Naylor*, 250 Ill. App. 3d at 1009. Therefore, Tawrel had standing to bring the custody petition under section 601(b). Furthermore, we are not aware of any authority holding that such appointments are binding upon the trial court in determining what custodial arrangement is in the best interests of the minor.

Finally, we note that the other authorities relied upon by the Pattersons are distinguishable from the instant case. See *In re Custody of Cannon*, 268 Ill. App. 3d 937 (1994); *Hanson v. McGowan*, 197 Ill. App. 3d 708 (1990). In those cases, the courts found that nonparents lacked standing to petition for custody under section 601(b) of the Act because the natural parents were still considered to have physical custody over their children even though they were not in actual physical possession of the child. However, in those cases there was no impediment that would have prevented the natural parents from acting as the child's custodian. As already noted, because of his incarceration, it was impossible for Richard J. to act as physical custodian of A.W.J. See *Naylor*, 250 Ill. App. 3d at 1009; *Milenkovic*, 93 Ill. App. 3d at 212.

For all of these reasons, we conclude that Tawrel had standing to petition for the custody of A.W.J. under section 601(b) of the Act. We therefore do not believe that the trial court erred in denying the Pattersons' motion to dismiss that portion of Tawrel's petition.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and GALASSO, JJ., concur.