NOTICE

Decision filed 07/02/19. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2019 IL App (5th) 190082

NO. 5-19-0082

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* CUSTODY OF K.N.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Gary Ferrari and Rebecca Ferrari, | ) | Randolph County. |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | No. 18-F-19 |
| | ) | |
| Bethany Nicholle Moore, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Respondent-Appellee). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Overstreet and Justice Chapman concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioners, Gary and Rebecca Ferrari, appeal the Randolph County circuit court's dismissal of their petition for allocation of temporary and permanent parental responsibilities with respect to the minor, K.L., for lack of standing. For the following reasons, we affirm.

¶ 2    K.L. was born on July 15, 2015, to the respondent, Bethany Nicholle Moore, and Christopher Liter, petitioner Rebecca Ferrari's son. On July 18, 2015, the Illinois Department of Children and Family Services (DCFS) took protective custody of the minor after receiving a hotline report that K.L. was born substance abused. The State's petition for adjudication of wardship alleged that K.L. was neglected due to Moore testing positive for marijuana and opiates at K.L.'s birth and failing to seek adequate prenatal care. A shelter care hearing was held on July 20, 2015, and DCFS was awarded temporary custody of K.L. On August 15, 2015, K.L. was

placed with the petitioners. On September 16, 2015, Moore admitted to the neglect allegations in the State's petition for adjudication of wardship. The trial court's order of adjudication, issued that same day, warned Moore that she "must cooperate with [DCFS], comply with the terms of the service plan, correct the conditions that require the child(ren) to be in care, or risk termination of parental rights."

¶ 3    Also on September 16, 2015, Children's Home and Aid Society caseworker Christa Garcia filed a dispositional report. It stated that Moore's service plan was initiated on August 26, 2015, and the permanency goal was for K.L. to return home within 12 months. Moore's objectives were to complete substance abuse treatment, parenting education services, and mental health counseling; to establish independence; and to participate in visitation with K.L.

¶ 4    On December 8, 2015, Moore and Liter were charged with residential burglary in violation of sections 19-3(a) and 5-2(c) of the Criminal Code of 2012 (720 ILCS 5/19-3(a), 5-2(c) (West 2014)). On December 14, 2015, Liter died by suicide while incarcerated in the Randolph County jail. On March 11, 2016, Moore pleaded guilty to the charges and was sentenced to four years in the Department of Corrections (DOC); however, the trial court also found her eligible for the impact incarceration program, in which her sentence would be reduced to time served upon certification by the DOC that she successfully completed the program. Moore was accepted into the program on April 18, 2016. On August 18, 2016, she successfully completed the program and was released from custody. Upon her release, she reinstated regular visitation with her daughter.

¶ 5    On May 4, 2017, the trial court entered a permanency order indicating that Moore had made substantial progress toward returning K.L. home. Garcia's dispositional reports indicated that Moore was compliant with her service plan. Another permanency order filed on October 26, 2017, again indicated that Moore had made substantial progress toward returning K.L. home. On

April 4, 2018, Garcia's dispositional report recommended that guardianship of K.L. remain with DCFS but that legal custody be granted back to Moore.

¶ 6    On April 6, 2018, the petitioners filed the petition at issue in this case, seeking temporary and permanent parenting time and decision-making authority with respect to K.L. This petition was served on Moore on April 9, 2018, the same day that the trial court filed a permanency order returning physical custody of K.L. to her.

¶ 7    On April 25, 2018, the petitioners filed a motion for leave to intervene in the juvenile case. The State, DCFS, and Moore all objected to the petitioners' motion.

¶ 8    On May 24, 2018, the trial court entered an order approving of an agreement reached between Moore and the petitioners. The petitioners withdrew their motion for leave to intervene in the juvenile case and were granted monthly weekend visitation with K.L.

¶ 9    On October 11, 2018, an order of discharge was entered, closing the juvenile matter and awarding legal custody of K.L. to Moore.

¶ 10    On November 1, 2018, the parties agreed to keep in place the provisions of the temporary order granting the petitioners monthly weekend visitation with K.L.

¶ 11    On November 5, 2018, Moore filed a motion to dismiss the petitioners' petition for temporary and permanent parental responsibilities with respect to K.L. Moore alleged that the petitioners lacked standing to bring this cause of action pursuant to section 601.2(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/601.2(b)(3) (West 2016) (jurisdictional requirements for commencing a proceeding for allocation of parental responsibilities "by a person other than a parent, by filing a petition for allocation of parental responsibilities *** but only if he or she is not in the physical custody of one of his or her parents")). She stated that the petitioners' proper course of action was pursuant to section 602.9 of the Act (*id.* § 602.9 (visitation by certain nonparents)).

¶ 12    A hearing was held on the motion on December 10, 2018. Moore's counsel requested that the trial court dismiss the petitioners' petition with leave to refile pursuant to section 602.9 of the Act. He asserted that Moore did not voluntarily and indefinitely relinquish custody of K.L. within the meaning of section 601.2(b)(3) of the Act and therefore the petitioners did not satisfy their burden to demonstrate standing. The court indicated that an evidentiary hearing was required to determine whether Moore had voluntarily relinquished physical custody of K.L. in satisfaction of the statute.

¶ 13    An evidentiary hearing was held on January 23, 2019. Rebecca Ferrari testified that K.L. was placed in her home by DCFS on August 15, 2015, after she had completed a foster parent certification. She was responsible for K.L. on a daily basis; her mother watched K.L. when she was at work. She took K.L. to doctor visits and provided her with her medications, food, and clothing. On a monthly basis, DCFS would send a caseworker to her house to check on them. She agreed that K.L. was placed with her at DCFS's discretion, that she was required to contact DCFS about any major decisions regarding K.L., and that it could have removed K.L. from her care at any time.

¶ 14    Ferrari stated that Moore exercised her visitation with K.L. until she went to jail for residential burglary in 2016; once Moore returned from her inpatient rehabilitation services, she resumed regular every-weekend visitation. She stated that on April 9, 2018, DCFS returned K.L. to Moore for a six-month probationary period. She stated that when she received K.L. in 2015, she was under the impression that she would have physical possession for nine months, since DCFS told her that was the timeline for most drug-related cases. She agreed that DCFS told her that her possession of K.L. would likely end at some point because Moore would get K.L. back if she successfully completed her service plan.

¶ 15 After listening to counsel's arguments, the trial court concluded that Moore did not voluntarily and indefinitely relinquish her parental rights. It did not believe that Moore's admission to the neglect allegations in the State's petition for adjudication of wardship constituted a voluntary placement of K.L., noting that a parent who learned that foster parents could file a custody proceeding against her if she stipulated to DCFS's allegations would be far less likely to cooperate with the State. It stated that "the deck's really stacked against a parent [at a shelter care hearing] and it's a very coercive environment for them to admit, to get help, and to undergo the counseling." It concluded that the petitioners failed to meet the necessary burden in order to establish the standing requirement set forth in section 601.2(b)(3) of the Act.

¶ 16 On January 25, 2019, the trial court entered an order dismissing the petitioners' petition for temporary and permanent parental responsibilities with regard to K.L. The petitioners appeal.

¶ 17 The Act provides that a person other than a parent may file a petition seeking allocation of parental responsibilities only if the minor child is not in the physical custody of a parent. 750 ILCS 5/601.2(b)(3) (West 2016). This statutory section creates a standing requirement that nonparents must satisfy in order to commence a custody action. *In re Custody of Peterson*, 112 Ill. 2d 48, 52-53 (1986). This standing requirement is intended to safeguard a natural parent's superior right to the care and custody of her children. *In re Marriage of Archibald*, 363 Ill. App. 3d 725, 736 (2006).

¶ 18 The nonparent bears the burden of proving that he or she has standing. *Id.* The determination must be made on the date relief is sought by the nonparent. *Id.* at 735. Whether a party has standing to pursue a custody petition under section 601.2 of the Act is a question of law and is reviewed *de novo*. *In re A.W.J.*, 316 Ill. App. 3d 91, 96 (2000).

¶ 19 In order to establish standing, the nonparent must show that the natural parent has relinquished "physical custody" of the child within the meaning of the statute. *In re Marriage of*

*Rudsell*, 291 Ill. App. 3d 626, 632 (1997). A determination of "physical custody" does not turn on possession; rather, it requires that the parent somehow voluntarily and indefinitely relinquished custody of the child. *Id.* Not every voluntary turnover of a child will deprive the parent of physical custody. *A.W.J.*, 316 Ill. App. 3d at 96. Rather, the court must consider such factors as (1) who was responsible for the care and welfare of the child prior to the initiation of custody proceedings, (2) the manner in which physical possession of the child was acquired, and (3) the nature and duration of the possession. *Id.*

¶ 20    There is no dispute that, on the date that the petitioners filed their petition, they were in physical possession of K.L., and DCFS maintained legal custody and guardianship.[1] The parties agree that the issue presented to this court is whether Moore voluntarily and indefinitely relinquished physical custody of K.L. under the meaning of the statute. We conclude that the trial court properly determined that she did not.

¶ 21    In reaching this determination, we first consider who was responsible for K.L. prior to the initiation of custody proceedings. The record reflects that, for an approximately 2½-year period prior to filing their petition, the petitioners were performing most of the caretaking functions for K.L. This factor favors the petitioners.

¶ 22    However, we find that the remaining factors favor Moore. The second factor to consider is the manner in which physical possession of K.L. was acquired. The juvenile case record shows that, after being awarded temporary custody of K.L. at the shelter care hearing, DCFS placed K.L. with the petitioners following Moore's stipulation to the allegations against her. Moore lost legal custody and physical possession of K.L. temporarily; however, she understood that if she

---

[1]Moore noted both before the trial court and this court the fact that, while the petitioners' petition was filed before she regained physical possession of K.L., it was not actually served on her until the same day that she regained possession. However, because we conclude that the petitioners have failed to prove that Moore voluntarily and indefinitely relinquished physical custody of K.L., we decline to discuss the effect, if any, that this fact has on the outcome of the case.

cooperated with DCFS and successfully participated in her service plan, the permanency goal was for her to regain custody of K.L. within 12 months. Thus, Moore's cooperation shows that she did not intend to indefinitely relinquish physical custody of K.L. As to the issue of voluntariness, as the trial court aptly pointed out, parents are often advised by their counsel that their long-term interests are best served by cooperating with the State and admitting to the allegations against them, particularly, as in this case, when those allegations are easily provable. Indeed, respondents in juvenile proceedings are repeatedly warned that failure to cooperate with DCFS risks losing their parental rights. See 705 ILCS 405/1-5(2)(d)(3) (West 2016) (if the child is alleged to be neglected, the court shall admonish the parents that, if custody or guardianship is awarded to DCFS, "the parents must cooperate with [DCFS], comply with the terms of the service plans, and correct the conditions that require the child to be in care, or risk termination of their parental rights"). There is clearly an absence of meaningful choice in such a situation. However, even if we considered this a voluntary relinquishment, we reiterate that not every voluntary turnover of a child will deprive the parent of physical custody. *A.W.J.*, 316 Ill. App. 3d at 96. There is strong evidence that Moore did not intend permanent relinquishment of custody, which is an equal consideration in the matter.

¶ 23    Finally, we consider the nature and duration of the possession by the nonparent. Here, too, the facts of the case clearly favor a finding that Moore did not voluntarily and indefinitely relinquish custody of K.L. Again, we note that DCFS retained legal custody and guardianship of K.L. and placed her in the petitioners' possession at its discretion. Rebecca Ferrari admitted that DCFS made monthly visits to her home to maintain oversight of K.L.'s care, that it remained responsible for making all major decisions regarding K.L., and that it could have removed K.L. from her care at any time. Also, despite lacking physical possession for a lengthy period of time, Moore regularly exercised her visitation with K.L.; our courts regard this as an important

consideration when determining that a parent has not voluntarily or indefinitely relinquished physical custody. See *Peterson*, 112 Ill. 2d at 55; *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 34. Moreover, it was made abundantly clear to both Moore and the petitioners that their possession of K.L. was temporary. Moore was aware that DCFS's permanency goal was to return K.L. to her possession within 12 months. Ferrari admitted that DCFS told her that K.L. would likely be placed with them for a nine-month period and that Moore would get K.L. back if she successfully completed her service plan. A parent has not relinquished physical custody where she expresses her intention to retain custody and the arrangement is inherently temporary in nature. See *Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 34.

¶ 24    The petitioners clearly had physical possession of K.L. for a 2½-year period and maintained responsibility for her daily welfare during that time. However, as we have previously stated, the determination that a parent does not have physical custody of a child does not turn on possession. *Rudsell*, 291 Ill. App. 3d at 632. The petitioners' burden was to demonstrate that they had standing in the custody proceedings; they were required to show that Moore voluntarily and indefinitely relinquished physical custody of K.L. Upon our consideration of the factors, we agree with the trial court that they failed to meet that burden.

¶ 25    For the foregoing reasons, the order of the circuit court dismissing the petitioners' petition for temporary and permanent parental responsibilities with regard to K.L. is affirmed.

¶ 26    Affirmed.

2019 IL App (5th) 190082

NO. 5-19-0082

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* CUSTODY OF K.N.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Gary Ferrari and Rebecca Ferrari, | ) | Randolph County. |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | No. 18-F-19 |
| | ) | |
| Bethany Nicholle Moore, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Respondent-Appellee). | ) | Judge, presiding. |

_____

**Opinion Filed:**     July 2, 2019
_____

| | |
|---|---|
| **Justices:** | Honorable Thomas M. Welch, J. |
| | |
| | Honorable David K. Overstreet, P.J., and |
| | Honorable Melissa A. Chapman, J., |
| | Concur |

_____

| | |
|---|---|
| **Attorney for Appellants** | Alan R. Farris, 221 South Market Street, P.O. Box 314, Sparta, IL 62286 |

_____

| | |
|---|---|
| **Attorneys for Appellee** | Lucas H. Liefer, Benjamin M. Grohmann, Cooper & Liefer Law Office, 205 East Market Street, Red Bud, IL 62278 |

_____

| | |
|---|---|
| **Intervenor** | Attorney General of Illinois, Civil Division, 100 West Randolph Street, 12th Floor, Chicago, IL 60601 |

_____